SCOTLAND COUNTY, APPELLANT v. THE MISSOURI, IOWA & NEBRASKA RAILWAY COMPANY.

1. **Taxation:** POWER OF LEGISLATURE TO GRANT EXEMPTION FROM. In the absence of constitutional restriction the legislature has power to grant exemption from taxation; but such exemption must be clear and unambiguous, or it will not be allowed.

2. **Corporation:** TAXATION: EXEMPTION OF STOCK EXEMPTS CORPORATE PROPERTY FROM. A railroad company whose stock is by law exempt from taxation, can not be taxed on property owned and used by it in the operation of its railway and necessary for that purpose. The stock is but the representative of the property.

3. **Railroad Charter constitutes a Contract.** A charter granted by the legislature and accepted by a railroad corporation, constitutes a contract between the State and the corporation, the obligation of which can not be impaired by a State constitution subsequently adopted.

4. **Taxation:** LEGISLATIVE EXEMPTION FROM: EFFECT OF SUBSEQUENT CONSTITUTIONAL PROHIBITION AGAINST EXEMPTIONS. The charter of a railroad company exempting the stock of the company from taxation, is not repealed by a constitutional provision adopted after acceptance of the charter, declaring that "no property shall be exempt from taxation, except," &c.

5. **Sec. 16 Art. 11 Constitution of 1865 construed.** Sec. 16 Art. 11 of the constitution of 1865 was not designed to withdraw existing exemptions from taxation. It was intended to operate prospectively only.

6. **Scope of general corporation and railroad laws of 1855.** The general purpose of the general corporation and railroad laws of 1855 (R. S. 1855 ch. 34 p. 369 and ch. 39 p. 404) and of the general corporation law of 1845 was to confer certain powers and privileges and impose certain duties and liabilities in the absence of any stipulations or provisions inconsistent with those, contained in special charters subsequently granted. Where such inconsistencies occur in subsequent legislation, it must be understood that previous restrictions were intended to be removed.

7. **Taxation:** EXEMPTION FROM: POWER OF LEGISLATURE TO WITHDRAW, CONSTRUCTION OF STATUTE. Sec. 7 of the corporation law (R. S. 1855 p. 371) declares that "the charter of every corporation that shall hereafter be granted by the legislature shall be subject to alteration, suspension and repeal, in the discretion of the legislature." Sec. 56 of the railroad law (R. S. 1855 p. 438) declares that "the legislature may at any time alter or amend this act; but such alteration

or amendment shall not impair the rights of companies previously organized." Sec. 57 (Ib.) declares that in future "all railroad companies shall have all the privileges contained in this act." In 1857 the legislature chartered the Alexandria & Bloomfield railroad company by a special act, which exempted the stock of the company from taxation for a term of years. *Held*, that the right of amendment reserved to the legislature was that contained in section 56 only, and that the exemption could not be withdrawn after the company had organized.

*Appeal from Scotland Circuit Court.*—Hon. E. V. WILSON, Judge.

*W. T. Kays* for appellant.

By the 7th section of Chapter 34 Art. 1 R. S. 1855, the legislature reserved the power to alter, suspend or repeal the defendant's charter. *Pacific R. R. v. Renshaw*, 18 Mo. 210; matter of *Lee & Co.'s Bank* 21 N. Y., Rep. 9; *Commonwealth v. Fayette Co. R. R. Co.*, 55 Penn. St. 452; *State v. Person*, 3 Vroom. 566; 6 ib. 157; Angell & Ames on Corp. sec. 767. Sections 56 and 57 of the Railroad act were intended only to give the right to repeal the act of which they formed part, and to determine the effect of such repeal or alteration. The right to alter, etc., any special charter, is neither granted nor withheld by those sections. Hence this law is not repugnant to the general law embraced in chap. 34 art. 1, nor does it fully embrace the whole subject matter of that law. In so far as there is any conflict between sec. 7 chap. 34 art. 1, and sections 56 and 57 of the Railroad law of 1855, it amounts to this, that the latter law limits the former in its application to corporations formed under the latter law, and the former furnishes the rule governing alterations, etc., in all other cases. *Gordon's Ex. v. Mayor*, 5 Gill 231; *Beale v. Hale*, 4 Howard 37; Broom's Legal Maxims p. 21, side page 28, 5th ed; *Matter of the Reciprocity Bank*, 22 N. Y., 9.

*A. J. Baker, P. E. Bland and Frank Hughes* for respondent.

1.  The exemption of the stock from taxation, exempts also the property, which the stock represents, and which is necessary to the transaction of the ordinary business of the corporation. *R. R. Co. v. Mayor,* 14 Geo. 279; *Mayor v. Balt. & O. R. R.,* 6 Gill 295; *New Haven v. City Bk.,* 31 Conn. 106; *State v. Tunis,* 3 Zab. 547; *State v. Bentley,* ib. 532; *Hann. & St. Jo. R. R. v. Shacklett,* 30 Mo. 550; *Augusta v. R. R. & Bk. Co.,* 26 Geo. 651.

2.  The defendant by virtue of the consolidation, succeeds to the exemption from taxation contained in section 9 of the Alexandria & Bloomfield Railroad charter. *State ex rel. v. Green Co.,* 54 Mo. 551; *Phil. & Wil. R. R. v. Maryland,* 10 How. 376; *Tomlinson v. Branch,* 15 Wal. 460.

3.   Neither the Constitution, art. 11 sec. 16, nor the act of March 10, 1871, providing a uniform system for assessing and collecting taxes from railroad corporations, repeals section 9 of the charter of the Alexandria & Bloomfield Railroad Company.   Cooley on Const. Lim. 62, 63; Sedg. on Stat. and Const. Const. 167, 173, 161, note A; *Seamans v. Carter,* 15 Wis. 548; *State v. Atwood,* 11 ib. 423; *Finney v. Ackerman,* 21 ib. 268; *Garfield v. Bemis,* 2 Allen 446; *N. B. Bank v. Copeland,* 7 ib. 140; *Tilman v. Lansing,* 4 John. 45; *Bartruff v. Remey,* 15 Iowa 257; *Abingdon v. Duxbury,* 105 Mass. 287; *Armstrong, v. Hinds* 48 N. Y. 505; *Ely v. Holton,* 15 ib. 376; *Bailey v. Major,* 7 Hill 146; *Dash v. Van Kleek,* 7 Johns 477; *Sayre v. Wisner,* 8 Wend. 661; *State v. Auditor,* 41 Mo. 25; *State v. Macon Co. Ct.,* ib. 453; *McManning v. Farrer,* 46 ib. 376.   Where an exemption by special enactment of specific property from taxation, has once been established, such exemption will not be held to be repealed by implication.   The intention to repeal, must be as clearly expressed, as was the intention to exempt. *State v. Minton,* 3 Zab. 529; *State v. Bently,* ib. 532; *State v. Jersey City,* 2 Vroom. 575; *Williams v. Pritchard,* 4 D. & E. 2; *Fosdick v. Perrysburg,* 14 Ohio St. 485: *Brown v. Co. Comm.,* 21 Penn. St. 43; *Gregory's Case,* 6 Coke's Rep. 19; *Blain v. Baily,* 25 Ind. 165; *Clark v. Davenport,* 14 Iowa 494; *Burke v. Jeffreys,*

20 ib. 145 ; *Felt v. Felt*, 19 Wis. 193 ; *Mead v. Bagnall*, 15 ib. 156 ; *St. Louis v. Alexander*, 23 Mo. 483 ; *St. Louis v. Indp't Ins. Co.*, 47 ib. 146 ; *Deters v. Renick*, 37 ib. 597 ; *Vastine v. Probate Court*, 38 ib. 529 ; *State v. Miller*, 1 Vroom 369.

The Legislature, by the act of February 27, 1875, expressly withdrew this exemption. This shows that the understanding of that branch of the government is that direct legislation was necessary. See *Smith v. Clark County*, 54 Mo. 58.

4. If the act of March 10, 1871, was intended to apply to the defendant's charter, so as to repeal the exemption from taxation as contained in section 9, of said charter, then it is in conflict with the constitution of the United States, in this, it impairs the obligation of defendant's contract with the State of Missouri, as contained in said 9th section of the charter.

(*a*) An exemption from taxation — when not prohibited by the Constitution — may be made by a State Legislature.

(*b*) When such exemption is contained in a charter granted by a State Legislature to a corporation, it becomes, after the incorporators have accepted such charter, and organized under it, a contract with the State and is protected by the Constitution of the United States from alteration and repeal; UNLESS there is, in the charter itself, or in the general law in force at the time of its adoption and acceptance, and which general law is, by its terms, made applicable to *corporations formed under such charters*, a reserved right to make such alteration or repeal, and in the absence of any such reserved power on part of the legislature, any alteration or repeal which has for its object the repeal of such exemption, is void for repugnancy to the Constitution of the United States. *Dartmouth College v. Woodward*, 4 Wheat 518 ; *State Bank v. Knoop*, 16 How. 369 ; *Ohio Life Ins. and T. Co. v. Debolt*, ib. 416 ; *New Jersey v. Wilson*, 7 Cranch. 164 ; *Providence Bank v. Billings*, 4 Pet. 561 ; *Charles River Bridge v. Warren Bridge*, 11 Pet.

420; *Gordon v. Appeal Tax Court,* 3 How. 133; *State v. Mansfield,* 3 Zab. 510; *Gardner v. State,* 1 ib. 557; *Johnson v. Commonwealth,* 7 Dana 342; *Neustadt v. Ill. Cent. R. R.* 31 Ills. 484; *Bank v. New Albany,* 11 Ind. 139; *Home of the Friendless v. Rouse,* 8 Wal. 430; *Washington University v. Rouse,* ib. 439.

It remains only to inquire whether the Legislature has reserved such a right to itself. And this depends on the construction to be put on sec. 7 (R. S. 1855, p. 371) and secs. 56 and 57 (ib. 438).

The plaintiff claims that the liability of the defendant's charter to "*alteration, suspension or repeal,*" is measured by the provisions of said section 7, and that by reason of such reserved authority the Legislature on the 10th day of March, 1871, had the power to repeal the exemption from taxation contained in plaintiff's charter, notwithstanding the fact the corporation had been organized previous to such repeal.

The defendant upon the contrary claims that the act of 1853, re-enacted and amended in 1855, covers the whole field as to railroad corporations, and is the law as to them in all matters wherein there is any conflict between said act, and the act of 1845, and that the 56th section of the law of 1855, applies as well to railroads formed under special charters, as to those organized under the provisions of that act.

The design indicated in sec. 57 *supra,* clearly was to place all railroads, so far as the same could be done without violation of the contract contained in their charter, on an equal footing, and that the act, so far as it could legally be made to do so, should apply alike to companies organized under special charters and those organized under that act.

If it is a PRIVILEGE to have exemption from taxation, and to have that immunity protected from legislative interference, then this section 57 has the effect of engrafting into the charter of every railroad company the

provisions of section 56, and to protect the companies organized under special charters, from amendment, after organization in such a manner as to effect any of their RIGHTS. That this is a privilege, see *Smith v. Clark County*, 54 Mo. 58; *State ex rel. v. Green County Court*, ib. 540.

The object of the State in granting this privilege must be kept in mind, viz: "to induce capital to invest in railroads which were to be constructed here, not so much with a view to furnish facilities to existing wealth and population and commerce, as to create them in a wilderness," as said by Napton J. in *Lackland v. N. Mo. R. R. Co.* To this end it was necessary to guarantee protection to capital. Section 7 *supra* seemed a standing menace, authorizing, as it did, a repeal of any charter. See *Renshaw v. Pacific R. R.* It was to remove this danger that section 56 was passed, guaranteeing vested rights in railroad corporations.

It is true that the "act concerning corporations" at one time, covered the whole field of corporations. That was, however, before the Legislature had passed any laws classifying the different kinds of corporations, making provision for the government of each particular class. When, however, this was done, it was an expression of the legislative will that, so far as this class of corporations was concerned, it should be taken from under the operation of this general law of corporations, and be governed by provisions specially applicable to its class. This railroad corporation law is, as to the "act concerning corporations," a special or particular statute in this, that it selects from the numerous kinds of corporations covered by this latter act, a particular class, and provides for their formation and government.

It is a general law, in so far as it applies to all corporations formed, or to be formed, for the purpose of constructing and operating railroads. It is as to that class of corporations, a *revision* of, or substitute for, the law of *corporations* and not an *amendment*, and being a subsequent statute on that subject, it repeals the first to the extent to

which its provisions are revised or substituted.    *Tyler v. City of St. Louis*, 56 Mo. 64; *United States v. Tynen*, 11 Wal. 88; *Henderson's Tobacco*, ib. 652; *Murdoc v. Memphis*, 20 Wall. 590; 2 C. L. J. 135; *Pierpont v. Crouch*, 10 Cal. 315; *Bartlett v. King*, 12 Mass. 555; *Nichols v. Squire*, 5 Pick. 168; *Rogers v. Watrous*, 8 Tex. 62; *Daviess v. Fairbairn*, 3 How. 636; *Leighton v. Walker*, 15 Ills. 59; *Larrabee v. Baldwin*, 35 Cal. 155; *Hartford Bridge Co. v. East Hartford*, 16 Conn. 150.

NAPTON, J.—The points arising in this case are presented by an agreed statement of facts, which is as follows:

1st. That by an act of the General Assembly of the State of Missouri, entitled an act to incorporate the Alexandria & Bloomfield Railroad Company, approved February 9th, 1857, the Alexandria & Bloomfield Railroad Company became and was duly incorporated, possessed of all the powers, privileges, rights, immunities, exemptions, franchises and properties, and subject to all the liabilities, obligations and restrictions mentioned in said act. 2d. That on the 13th day of September, A. D. 1864, said company was duly organized and directors elected, as required by section four of said act, and immediately said company commenced and proceeded to carry on its proper business and railroad operations, under the privileges and conditions in said act mentioned. 3d. That by an act of the said General Assembly, entitled "an act to amend an act entitled an act to incorporate the Alexandria & Bloomfield Railroad Company," approved February 9th, 1857," which said amendatory act was approved February 19th, 1866, and by the due acceptance of the first section of said amendatory act the corporate name of said railroad company was changed to that of the Alexandria & Nebraska City Railroad Company. 4th. That in pursuance of the general laws of the States of Missouri and Iowa, authorizing the consolidation of railroad companies, owning connecting railroad lines in said States, the

said Alexandria & Nebraska City Railroad Company, on the 3d day of May, 1870, duly and legally consolidated with the Iowa Southern Railway Company, a railroad company duly organized and incorporated and existing under the laws of the State of Iowa, and that thereafter the said Alexandria & Nebraska City Railroad Company and the said Iowa Southern Railway Company became merged and consolidated into and formed one company, under the corporate name of Missouri, Iowa & Nebraska Railway Company, this defendant. 5th. That in pursuance of the laws of Missouri, passed and approved March 10th, 1871, providing for uniform assessment and collection of taxes upon railroad companies owning railroads within this State, the President of the said'Missouri, Iowa & Nebraska Railway Company made report to the Auditor of the State of the amount of completed road in the various counties in this State and valuation thereof, belonging to said railway company, as required by said act. 6th. It is further agreed that prior to the passage of said act of March 10th, 1871, no notice was given to the President and Secretary of said Missouri, Iowa & Nebraska Railway Company, or either of them, of any intention upon the part of the Legislature of said State of Missouri to in anywise alter, amend or repeal any of the provisions of the said Alexandria & Bloomfield Railroad charter, nor of the said Alexandria & Nebraska City Railroad charter, nor of the said Missouri, Iowa & Nebraska Railway charter, and it is agreed that no notice of any kind whatever was given to the said president and secretary by the said Legislature or any one else, of any intention on the part of the said Legislature to in anywise change or affect any of the provisions of said charters, nor was any notice ever given to any of the Presidents or Secretaries of said Alexandria & Bloomfield or said Alexandria & Nebraska City Railroad Companies, except the provisions of the Constitution of the State of Missouri, adopted in 1865, to-wit: Section 16, article 11 of said Constitution. 7th.

That the valuation of all the property owned by said Missouri, Iowa & Nebraska Railway Company within the State of Missouri, upon said railway running from the City of Alexandria, in Clark county, to the Iowa State line between Missouri and Iowa, will not exceed one million dollars, and that not more than that amount of stock has been issued or existing upon said line of road. 8th. That all the property upon which the tax has been levied, and mentioned in plaintiff's petition, is property necessary for the use and operation of said railway, and is used for no other purpose. 9th. That the true valuation of all property owned by said railway company, lying in the said county of Scotland, upon which tax has been levied, is $138,115.00, and that said amount was duly certified by the Auditor of the State of Missouri to the clerk of the county court of the said Scotland county, on the 24th day of July, A. D. 1872. 10th. It is further agreed that if the Court shall find that the said defendant is and was liable to pay county taxes to the said county of Scotland for the year 1872, then the Court shall render judgment against the defendant for such taxes in the sum of two thousand three hundred and forty-seven dollars and ninety-five cents, ($2,347.95), and interest thereon from December 31st, 1872, according to law. 11th. It is further agreed that if the court shall find that the said defendant is, and was, liable to pay school taxes to said county of Scotland for the year 1872, in that case the court shall render judgment for such taxes in the sum of one thousand and ninety-one dollars and sixty-six cents, and interest thereon from December 31st, 1872, as provided by law. 12th. It is further agreed that nothing in this agreement shall estop the said defendant from hereafter showing any mistake which may appear in the amount of taxes as hereinbefore set forth, which the said defendant shall be held liable to pay, but the regularity of the levy and assessment made by the County Court of Scotland county and State Board of Equalization, shall in no wise be called in question.

Given under our hands on behalf of said plaintiff and defendant, the 5th day of May, 1874.

Whereupon the plaintiff moved the Court to make the following declarations of law: 1st. There was no consideration for the grant of the charter of the Alexandria & Bloomfield Railway Company, or for the exemption from taxation claimed under the same, and that therefore there was no contract between the State and said Company as to said exemption. 2d. That by the 7th section of chapter 34, article 1, of the revised statutes of 1855, the Legislature reserved the power to amend, alter, or repeal the exemption from taxation claimed under said charter; and that the Legislature, or a Convention called to form a Constitution for the State of Missouri, by virtue of said reservation had the power to repeal said exemption, without notice to the secretary or president of the company. 3d. That said exemption from taxation claimed in defendant's charter, was repealed by the Constitution of Missouri, adopted the 4th day of July, in the year 1865, and the act of the Legislature passed in pursuance thereof; and that said company is liable for the tax mentioned in plaintiff's petition, by virtue of the act approved March 20th, 1871. 4th. That upon the agreed statement of facts in this cause, plaintiff is entitled to recover the amount of tax with interest, as stated in plaintiff's petition. 5th. The section in defendant's charter exempting defendant's stock from taxation for the period of twenty years from its completion, is to be strictly construed, and does not thereby exempt the real, personal, or mixed property of defendant, but at most only the stock in the hands of individual stockholders. 6th. That the defendant, by the consolidation of the Alexandria and Nebraska City Railway Company, and the Iowa Southern Railway Company did not succeed to all the rights, privileges and immunities of the Alexandria and Bloomfield Railway Company. Which motion was by the court overruled, and to which order of court the plaintiff at the time excepted.

And thereupon, the defendant moved the court to make the following declarations of law:

1st. The charter of the Alexandria and Bloomfield Railroad Company, after the acceptance by and organization of said company under the same, constituted a contract between the State and said company for exemption from taxation for a period of twenty years from the completion of said Railroad, of all the property of said company necessary for the operations of said railroad, and the property sought to be taxed in this case is within the said contract and is exempt from taxation by the plaintiff. 2d. That the defendant by the consolidation of the Alexandria and Nebraska City Railroad Company (the old Alexandria & Bloomfield Railroad Company) and the Iowa Southern Railway Company, became entitled to exemption for twenty years, as to all that portion of its railroad in this State, which belonged, or would have belonged to the said Alexandria & Bloomfield Railroad, and necessary to its operations as a railroad, and as the property in controversy pertaining to that portion of the consolidated company belonged, or would have belonged to said Alexandria & Bloomfield Railroad Company, the same is exempt from taxation and the plaintiff is not entitled to recover. 3d. That the act of the legislature, under which the plaintiff asks to tax the property in controversy is unconstitutional in this, that it impairs the obligation of the contract of the State with the said Alexandria & Bloomfield Railroad Company as to the rights, privileges and exemptions to which the defendants succeeded by the consolidation, within the meaning of section 10, article 1 of the Constitution of the United States. 4th. The Legislature did not reserve the right to alter, amend or repeal the charter of said Alexandria & Bloomfield Company after the organization of said company. 5th. If the Legislature had reserved the right to alter, amend or repeal the said charter after notice to the president or secretary, then, before any amendment, alteration or repeal could be made, said notice

would have to be given, and the company could not be affected except by such notice. 6th. That upon the agreed statement of facts the plaintiff cannot recover, and the judgment should be for the defendant. Which motion was by the court sustained, to which order the plaintiff at the time excepted, whereupon the court rendered judgment in favor of defendant.

It was at one time a question of considerable doubt whether a Legislature could divest itself or its successors

1. TAXATION: power of legislature to grant exemption from. of the power of taxation; but it may be considered as settled now that legislative bodies have the power by selecting the subjects of taxation and excluding or exempting other subjects which they had the power to tax, to hold out inducements to proposed investment of capital unless there is some constitutional restriction. The subject is referred to and somewhat discussed in the case of the *State Bank of Ohio v. Knoop*, 16 How. 369, and *Dodge v. Wolsey*, 18 Howard 331. It is agreed, on all hands, that the exemption must be clear and unambiguous. The exemption claimed in this case depends on the construction of the ninth section of the defendant's charter adopted in 1857. That section is as follows:

" The stock of said company shall be exempt from taxation for the period of twenty years after its completion."

2. CORPORATION: taxation: exemption of stock exempts corporate property from. In accordance with the decision of this court in the case of the *H. & St. Joe R. R. Co. v Shacklett*, 30 Mo. 550, supported as it is by numerous decisions in other states, it is clear that a tax on the property represented by the stock is substantially a tax on the stock. It is simply respectful to the Legislature to assume that a valuable privilege was designed to be conferred by this section, but if the exemption of the stock did not extend to the property which the stock represented, the section was purely illusory.

That the present defendant succeeded to all the privileges and liabilities of the Alexandria & Bloomfield Com-

Scotland County v. The Missouri, Iowa & Nebraska Railway Co.

3. RAILROAD CHAR-
TER   CONSTITUTES
A CONTRACT.
pany is conceded. It is insisted, however, that Sec. 16 Art. 11 of the Constitution of 1865, operated to repeal the exemption contained in defendant's charter. This section is as follows : " No property, real or personal, shall be exempt from taxation, except

4. TAXATION: leg-
islative   exemp-
tion from :  effect
of subsequent con-
stitutional prohi-
bition against ex-
emptions
such as shall be used exclusively for public schools, and such as may belong to the United States, this State, the counties, or to municipal corporations within the State."

It is not now maintained by any judicial tribunal that a change in the political form of civil society has the magical effect of dissolving its moral obligations or impairing contracts previously vested. Constitutional Conventions, which are of frequent occurrence in many of our States, it is believed, have no more power over vested rights than ordinary Legislatures. It must . be remarked, however, that

5 SEC. 16 ART. 11
CONSTITUTION  OF
1865 CONSTRUED
upon well settled rules of construction, this 16th section was evidently designed to be prospective and not retrospective in its operation, and it would be an unjust imputation on the convention which framed that Constitution to infer that they designed that section to operate upon existing rights.

Another question discussed in this case is whether the act of 10th of March, 1871, was intended to repeal the 9th section of defendant's charter; and this leads to an examination of the principal question in the case, which relates to the construction of the 7th section of the act concerning corporations, found in the revisions of 1845 and 1855, which declares that " the charter of every corporation that shall hereafter be granted by the Legislature, shall be subject to alteration, suspension and repeal, in the discretion of the Legislature." This general law concerning corporations consisted originally of only two articles, the first of which related to the general powers, privileges and liabilities of corporations, and the second provided modes of procedure against them. There was no statute at that time classifying corporations, and probably every private corporation

in the State was created by a special act.    As early as 1853,
however, and certainly in the revision of 1855, this classifi-
cation took place, dividing corporations into benevolent
associations, fund associations, mining, manufacturing, &c.,
associations, plank-road associations, and rail-
road corporations.    The general statute, the
7th section of which has been copied above,
was still retained in the code.    The chapter concerning
railroad corporations is more extensive than either of the
others, and section 56 is as follows :    " The Legislature may
at any time alter or amend this act, but such alterations or
amendment shall not impair the rights of companies previ-
ously organized, or take away, or impair any remedy given
against such corporations, its stockholders or officers, or
any liability which shall have been previously incurred."
The next section is as follows :    " All existing railroad cor-
porations within the State, and such as are now or may be
hereafter chartered shall respectively have and possess all
the powers and privileges contained in this act, and they
shall be subject to all the duties, liabilities and provisions
contained in this act, not inconsistent with the provisions
of their charters."

6. SCOPE OF GENER-
AL CORPORATION
AND RAILROAD
LAWS OF 1855.

It is now insisted, on the part of the plaintiff, that the
charter of defendant in 1857 was subject to the 7th section
of the general act, concerning corporations
above quoted, and therefore subject to sus-
pension, alteration and repeal, in the discre-
tion of any succeeding Legislature.    This position can only
be maintained by the assumption that the act of 1857,
which constitutes defendant's charter, is entirely consistent
with this provision in the acts of 1845 and 1855, for it will
hardly be contended that one Legislature can bind its suc-
cessors, and if the Legislature of 1857 thought proper to
disregard this provision in the acts of 1845 and 1855, there
is no principle upon which such power could be questioned.
The 11th section of defendant's charter provides : That
" said company shall commence the construction of said road

7. TAXATION: ex-
emption from:
power of legisla-
ture to withdraw,
construction of
statute.

within ten years after the passage of this act, and complete the same in ten years thereafter." By section 6 of the general corporation law of 1845 and 1855, it is provided that, "if any corporation hereafter created by the Legislature shall not organize and commence the transaction of its business within one year from the date of its incorporation, its corporate powers shall cease." In addition to this section in the general corporation law, section 55 of the chapter concerning railroad corporations, provides that "if any corporation formed under this act shall not within two years after its articles of association are filed and recorded in the office of the Secretary of State, begin the construction of its road and expend thereon ten per cent. on the amount of its capital, or shall not finish the road and put it in operation in five years after filing its articles of association as aforesaid, its corporate existence and power shall cease." This charter of 1857, it is clear, is totally irreconcilable with the provisions just quoted, for defendant was allowed by its charter ten years to commence, and then ten years to complete the road. Without going into any detailed examination of the various provisions of these general laws of 1845 and 1855, it is sufficiently obvious that their general object was to confer certain powers and privileges and impose certain duties and liabilities in the absence of any stipulations or provisions inconsistent with those, contained in special charters subsequently granted. Where such inconsistencies occur in subsequent legislation, it must be understood that previous restrictions were intended to be removed, for reasons satisfactory to the Legislature. In view of the conclusion we have reached in regard to the effect of the 7th section of the general corporation law upon the 9th section of defendant's charter, the question so elaborately discussed by counsel, concerning the intent of the Legislature by the act of 10th of March, 1871, seems unnecessary to be passed upon, since it is clear that whether said law was designed to include the property of defendant

or not, it could not have that effect upon the facts in the agreed case. Judgment affirmed; all concurring.

AFFIRMED.