THE STATE *ex rel.* WINE, *Collector*, v. KEOKUK & WESTERN RAILROAD COMPANY, *Appellant.*

1. **Railroads, Consolidation of:** TAXATION. The consolidation of the rights, privileges, franchises and properties of two or more railroad companies into one, where there is no provision of the statute or constitution to the contrary, leaves the different portions of the road, so formed into one, subject to the same rules of taxation that existed before the consolidation.

2. ———— : ————. That part of the new line which was exempt will continue to be exempt, and that part which was subject to taxation will continue subject to taxation.

3. ———— : STATUTE. A railroad company of this state consolidating under the act of the legislature of March 20, 1869, with a connecting line in an adjoining state, becomes a new company by such act of consolidation.

4. ———— : EXEMPTION FROM TAXATION : CONSTITUTION. Being thus created after the adoption of the constitution of 1865, the legislature had no power to grant it immunity from taxation, and an exemption from taxation enjoyed by the consolidating company before the consolidation did not and could not pass to the new one.

5. **Taxation, Exemption From.** Exemption from taxation must be granted in terms too plain to be mistaken.

6. ———— : PERSONAL PRIVILEGE. Such exemption is a personal privilege, and cannot be assigned except by legislative authority.

State ex rel. Wine v. Keokuk & W. Ry. Co.

7. ———: FORMER JUDGMENT. A former judgment in favor of a railroad company against the validity of taxes, on the ground that the property was exempt from taxation, will not bar a suit for taxes accruing later and constituting a separate and distinct cause of action.

8. ———: ———. Nor will the proposition that the legislature can, in the face of the constitution of 1865, exempt property from such taxation bar such suit because of a concession to that effect made by counsel in some other case.

*Appeal from Scotland Circuit Court.*—HON. B. E. TURNER, Judge.

AFFIRMED.

*F. T. Hughes* for appellant.

(1) The ninth section of the charter of the Alexandria and Bloomfield Railroad Company, exempting the property of that company from taxation for twenty years after completion, constituted a contract between that corporation and the state within the meaning of that clause of the constitution of the United States which declares that no state "shall pass any law impairing the obligation of contracts." *Trustees of Dartmouth College v. Woodward,* 4 Wheat. 518; *Sloan v. Railroad,* 61 Mo. 30; *Scotland County v. Railroad,* 65 Mo. 123; *State v. Garroutte,* 67 Mo. 465; *State ex rel. v. Greer,* 78 Mo. 191. (2) This exemption was one of the rights and privileges of the Alexandria and Bloomfield Company, and was transferred to the Missouri, Iowa and Nebraska Railway Company by virtue of the consolidation, so that thereafter this company held the right and privilege to the same extent as it had been before held by the said Alexandria and Bloomfield Company. Rorer on Railroads, 593, 1501; *State v. Greene County,* 54 Mo. 540; *Scotland County v. Railroad,* 65 Mo. 123; *State v. Garroutte,* 67 Mo. 465; *Wagner v. Meety,* 69 Mo. 150; *State ex rel. v. Greer,* 78

Mo. 188; *Railroad v. Maryland*, 10 How. 376; *Tomb-linson v. Branch*, 15 Wall. 460; *Railroad Tax Case*, 18 Wall. 460; *Railroad v. Georgia*, 92 U. S. 665; *Branch v. City of Charleston*, 92 U. S. 667; *Scotland County v. Thomas*, 94 U. S. 682; *Schuyler County v. Thomas*, 98 U. S. 169; *Greene County v. Conness*, 109 U. S. 140; *Livingston County v. Bank*, 128 U. S. 102. (3) The consolidation of these companies "was in perfect accord with the general purpose of the original charter of the Alexandria and Bloomfield Company." *Livingston County v. Bank, supra.* (4) This right and privilege was not simply to transfer to the consolidated company the physical property or constructed road of the Alexandria and Bloomfield Company, but the rights and privileges and franchises as well, to construct the line of road authorized to be constructed by this company within the time prescribed in the charter of the Alexandria and Bloomfield Company, and if completed within the time to have the completed line exempt from taxation for the same period as if it had been completed by the Alexandria and Bloomfield Company. The privilege to complete the road within the twenty years prescribed was as much a part of the contract as the right of exemption after completion, in fact "is property of the most valuable kind." Cases cited, *supra.* (5) A consolidation of a road in this state with another of an adjoining state, so as to form a continuous line, simply preserves the chartered rights in the respective states as they were before the consolidation. The duties and the obligations to the state, the rights and privileges of the companies, remain the same. Neither state law has any extra territorial force. Wood's Railway Law, p. 32 and note; *Railroad v. Wheeler*, 1 Black [U. S.] 286; *Muller v. Dows*, 94 U. S. 444. (6) A consolidation of a road in Missouri with one in Iowa, forming a continuous line under laws of Missouri, is not a sale or transfer of the Missouri

road to a corporation of another state. It remains a separate corporation in each state and subject to the respective laws. *Greene County v. Conness*, 109 U. S. 104; *State ex rel. v. Railroad*, 89 Mo. 523; Wood's Railway Law, p. 32, and cases cited. (7) This court and the circuit court of the United States, years ago, construed the laws of this state in reference to this charter and consolidation, and held the property of the Missouri, Iowa and Nebraska Company exempt from taxation. On the faith of these decisions, rights have been acquired which cannot now be divested without a violation of the section of the constitution of the United States before referred to. It is *stare decisis* and *res adjudicata. Thomas v. Scotland County, supra; Scotland County v. Railroad, supra;* Freeman on Judgments, sec. 326; *Gelpecke v. Dubuque*, 1 Wall. 206. (8) There was no power reserved in the general laws of Missouri applicable to the Alexandria and Bloomfield charter by which the legislature of that state could, by any act, repeal the exempting clause contained in it. *Scotland County v. Railroad*, and *State ex rel. v. Greer, supra.*

*John M. Wood*, Attorney General, and *John C. Moore*, Prosecuting Attorney, for respondent.

(1) The state of Missouri was not a party to the case of *Scotland County v. Railroad*, 65 Mo. 123, and nothing therein contained can be construed to take from her the sovereign right to tax appellant's property. (2) By agreement made May 3, 1870, by and between the Alexandria and Nebraska City, The Iowa Southern, and the Missouri, Iowa and Nebraska Companies, on one part, with the state of Missouri on the other, the right to exemption was surrendered to the state, the charter was annulled, and the new company (M., I. & N.) became organized under the general laws of the state, and not

under a charter. *Wagner v. Meety*, 69 Mo. 150; *Railroad v. Georgia*, 63 Ga. 483; *State ex rel. v. Garroutte*, 67 Mo. 445; *Railroad v. Maine*, 96 U. S. 499; *Trask v. Maguire*, 18 Wall. 391; *Clearwater v. Meredith*, 1 Wall. 25; *Railroad v. Georgia*, 98 U. S. 359. (3) This happened after July 4, 1865, the date of the adoption of the constitution of 1865. This constitution forbade the exemption claimed, and, therefore, the judgment of the circuit court should be affirmed.

BLACK, J.—This is a suit in the name of the state to the use of Wine, collector of Scotland county, to enforce the payment of state, county, school and municipal corporation taxes, levied on the property of the Missouri, Iowa and Nebraska Railway Company for the tax year ending in August, 1886. The defendant corporation became the purchaser of the railroad property after the taxes were levied, and the defense is that the property was exempt from taxation whilst owned by the Missouri, Iowa and Nebraska Railway Company. The circuit court ruled against the defendant, and hence this appeal.

The legislature, by the act of February 9, 1857 (Acts of 1856, p. 94), incorporated the Alexandria and Bloomfield Railroad Company with power to build a railroad from Alexandria, in Clark county, in the direction of Bloomfield, in the state of Iowa, to a point on the line between this and that state. The act provides that the construction of the road shall be commenced within ten years after its passage, and completed within ten years thereafter, and that "the stock of said company shall be exempt from taxation for a period of twenty years after its completion." It is alleged in the answer, and not denied, that the company was duly organized in 1864, and then commenced and proceeded to carry out its proper business and railroad operations under the act.

The name of the company was changed to that of the Alexandria and Nebraska City Railroad by authority of the act of February 19, 1866. (Acts of 1865, 1866, p. 222.) There are several sections in this act, and the fourth section provides that the whole, or any section thereof, shall be adopted by the board of directors, and shall be in full force from and after the adoption. It is alleged, and not denied, that the company adopted the first section, which authorized the change of name, but it does not appear that any of the other sections were adopted.

The Alexandria and Nebraska City Railroad Company and the Iowa Southern Railway Company, a corporation organized under the state of Iowa, were consolidated on the third of May, 1870, under the name of the Missouri, Iowa and Nebraska Railroad Company, thus forming one continuous line from Alexandria, on the Mississippi, in this state, to a point in the state of Iowa, near Nebraska City, on the Missouri river. It was admitted upon the trial that the railroad was constructed and put in operation through Scotland county in 1871, and completed to the state line in December, 1872. It does not appear how much work had been done in this state before the consolidation.

In 1886, and after the taxes in question had been levied, the entire consolidated road was sold under a decree of foreclosure, entered in the circuit court of the United States for the southern district of Iowa, to certain individuals, who conveyed it to the defendant corporation, the Keokuk and Western Railroad Company.

The period of twenty years' exemption had not expired when the taxes in question were levied by the county court of Scotland county. The general question, therefore, is, whether the property was exempt from taxation while owned by the consolidated company.

It was held in the case of *Scotland County v. this consolidated company* (65 Mo. 123), brought to recover taxes for the year 1872, that the exemption of the stock of a corporation is an exemption of the property represented by the stock. The court then proceeds to say: " That the present defendant succeeded to all the privileges and liabilities of the Alexandria and Bloomfield Company is conceded. It is insisted, however, that section 16, article 11, of the constitution of 1865, operated to *repeal* the exemption contained in the defendant's charter." It was then held that the designated section of the constitution did not, and could not, destroy rights existing when it was adopted, and that the legislature did not repeal the exemption by the tax law of March, 1871. As to the questions actually considered in that case, it is sufficient to say, we are satisfied with what was then said and ruled. The question whether the consolidated company succeeded to the right of immunity from taxation contained in the charter of the Alexandria and Bloomfield Company was then taken for granted, on what appears to have been a concession of counsel in this court, and that question we will now consider.

The consolidation of the rights, privileges, franchises and properties of two or more railroad companies into one, where there is no provision of the statute or constitution to the contrary, leaves the portions of the road thus formed subject to the same rules of taxation that existed before the consolidation. That portion of the new line which was exempt will continue to be exempt; and that portion which was subject to taxation will continue subject to taxation. This, we think, is the result of the following cases: *Phil. & Wilm. Railroad v. Maryland*, 10 How. (U. S.) 376; *Tomblinson v. Branch*, 15 Wall. 460; *Central Railroad & Banking Company v. Georgia*, 92 U. S. 665; *C. & O. Railroad v. Virginia*, 94 U. S. 718. The Alexandria and Nebraska City Railroad

OCTOBER TERM, 1889. 37

State ex rel. Wine v. Keokuk & W. Ry. Co.

Company was unquestionably exempt from taxation down to the time of the consolidation, namely, May 3, 1870; and, under the rule of the cases just cited, the new company acquired that immunity, so far as concerns the Missouri property, unless the law under which the consolidation was affected by the voluntary act of the two corporations produces a different result.

The sixteenth section of article 11 of the constitution of 1865, which went into operation before the date of the act under which the consolidation took place, provides : "No property, real or personal, shall be exempt from taxation, except such as may be used exclusively for public schools, and such as may belong to the United States, to this state, to counties or to municipal corporations, within this state."

The plaintiff takes the ground that when two railroad companies are consolidated they thereby surrender their charters, and the resultant company takes its powers and rights from the law which authorized the consolidation. In other words, that the old companies are dissolved and that a new one springs into existence. If it be true that the Alexandria and Nebraska City Company was dissolved by the act of consolidation, and the new company took its powers from the act authorizing the consolidation, then it must follow that the new company is not exempt from taxation; for the legislature had been deprived of the power to grant such immunity.

Whether the old companies were dissolved must depend upon the terms and provisions of the act of March 20, 1869 (Acts of 1869, p. 75), under which the consolidation took place; and we therefore set out the important portions of it. Section one provides : "That any railroad company organized under the general or special laws of this state, whose track shall at the line of the state connect with the track of the railroad of any company organized under the general or special laws of any adjoining state, is hereby authorized to make and

enter into any agreement with such connecting company for the consolidation of the stock of the respective companies whose tracks shall be so connected, making one company of the two, whose stock shall be so consolidated, upon such terms and conditions and stipulations as may be mutually agreed between them, in accordance with the laws of the adjoining states in which the road is located, with which connection is thus formed."

By section 2, the terms and provisions of the agreement must be approved by the holders of a majority of the stock in each of the companies, at a meeting called for that purpose; or by writing signed by them. Section 3 provides that, after the terms of the consolidation have been agreed to in one or the other of the modes above set forth, "it shall be competent for the boards of directors in each of said connecting companies to carry the same into effect, and adopt, by a resolution, a new corporate name for the company which shall be formed by the consolidation, and to call in the certificates of stock then outstanding in each company, and exchange them for stock in the new company, as may have been agreed by the terms of the consolidation; and a copy of the said consolidation agreement and the resolutions of consolidations, and the name adopted for the new company shall be filed with the secretary of state, and shall be conclusive evidence," etc.

The fourth section is in these words: "Any such consolidated company shall be subject to all the liabilities, and bound by all the obligations, of the company within this state, which may be thus consolidated with one in the adjoining state as fully as if such consolidation had not taken place, and shall be subject to the same duties and obligations to the state, and be entitled to the same franchises and privileges under the laws of this state, as if the consolidation had not taken place."

In *Central Railroad & Banking Co. v. Georgia*, *supra*, the legislature of Georgia had created two corporations, the Central Company and the Macon and Western

Company. Their charters limited the right of taxation to one-half of one per cent. upon their net income. The companies were consolidated under an act passed in 1872, and the question was whether there was a surrender of the charter of the Central Company. The court said : "It may be that the consolidation of two companies, or amalgamation, as it is called in England, if full and complete, may work a dissolution of them both, and its effect may be the creation of a new corporation. Whether such be the effect, or not, must depend upon the statute under which the consolidation takes place, and of the intention therein manifested." It is further held that there was no surrender of the charter of the Central Company, but the ruling goes upon the ground that the act only contemplated a merger of the property and franchise of the Macon and Western Company into the Central Company, the latter retaining its name and charter.

In *Railroad Company v. Georgia*, 98 U. S. 359, two railroad companies had been incorporated under the laws of Georgia, one in 1847 and the other in 1856. By their charters they were exempt from taxation beyond a specific amount on their net income. They were consolidated under an act of that state, passed in 1863, which gave them power to consolidate their stocks, and when consolidated to be known as "The Atlantic and Gulf Railroad Company." By that name the stockholders of the companies were empowered to sue and be sued, to purchase and enjoy real and personal property, and to exercise corporate powers. The act also declared that the immunities, franchises and privileges granted by the charters of the two companies should continue in force, except so far as they might be inconsistent with the act of consolidation. Under an act passed in 1874, the property of the new company was taxed as other property. This act of 1874, it was held, would be void, as impairing contracts, but for the act of 1863, and

the court in considering the effect of the consolidation said: "Did the consolidated companies become a new corporation, holding its powers and privileges as such under the act of 1863? Or was the consolidation a mere alliance between two pre-existing corporations, in which each preserved its identity and distinctive existence? Or, still further was it an absorption of one by another, whereby the former was dissolved, while the latter continued to exist? The answer to these inquiries must be found in the intention of the legislature as expressed in the consolidating act. We think the intention was the creation of a new corporation out of the stockholders of the two previously existing companies The consolidation provided for was clearly not a merger of one into the other, as was the case of *Central Railroad & Banking Company v. Georgia*, 92 U. S. 665. Nor was it a mere alliance or confederation of the two. If it had been, each would have preserved its separate existence, as well as its corporate name. But the act authorized the consolidation of the stocks of the two companies, thus making one capital in place of two. It contemplated, therefore, that the separate capital of each company should go out of existence as the capital of that company; and, if so, how could either have a continued separate being?" The court then goes on to say, in substance, that, as this new corporation took its powers and privileges from the act of 1863, it took them subject to the laws then in force, and, as a result, the tax act of 1874 was held to be valid and binding on the new company. The same line of reasoning is pursued in the tax cases of *Railroad Co. v. Maine*, 96 U. S. 499, and in *Railroad Companies v. State*, 63 Ga. 483.

The effect of consolidating three railroad companies into one, says the court in *McMahan v. Morrison*, 16 Ind. 172, "was a dissolution of the three companies named, and at the same instant the creation of a new

corporation." A recent text-book says: "The franchises of a corporation, formed by the consolidation of several companies, are derived wholly from the act of the legislature authorizing the consolidation." 2 Morawetz, on Priv. Corp. (2 Ed.) sec. 944. The same doctrine is asserted in terms, more or less positive, in the following cases: *Clearwater v. Meredith*, 1 Wall. 38; *Shields v. Ohio*, 95 U. S. 323; *Lauman v. Railroad*, 30 Pa. St. 42.

Now the Alexandria and Bloomfield Company had, by its charter, a capital stock of two million dollars, divided into shares of one hundred dollars each. The act of 1869 contemplates and provides for the surrender of the stock in both of the uniting companies; and accordingly we find it provided in the articles of consolidation that the stock issued by each of the companies and outstanding shall be surrendered, and shares of stock of the consolidated company issued therefor. The act speaks of the consolidated company as "the new company;" and the very process by which it is brought into being makes it a new company, and the effect of the consolidation was to dissolve both of the old companies. It is true the act of 1869 does not specifically enumerate the corporate powers and privileges conferred upon the new company, but the corporate powers and privileges are granted by reference to the powers of the company in this state which unites with the one of another state. There is in this respect some difference between this case and that of *Railroad Company v. Georgia*, 98 U. S. 359. But as said in *Railroad Company v. Maine*, *supra*, a new corporation may be as readily created by the union of two or more companies as by the union of individuals; and its powers and privileges may as well be designated by reference to the charters of other companies as by special enumeration, The conclusion is irresistible, that the Missouri, Iowa and Nebraska Railroad Company is a new corporation created under and by force of the act of 1869. Being thus created

after the adoption of the constitution of 1865, the legislature had no power to grant to it exemption from taxation. The exemption, therefore, did not and could not pass to the new company.

We cannot see that the fact that one of the consolidating companies was a Missouri and the other an Iowa corporation affects the conclusion just stated. The new company, in this state, is entitled to the privileges and subject to the obligations imposed upon it by the laws of this state; and in Iowa it is a corporation of that state and subject to the laws thereof. By the legislature of both states, however, it is but one company.

We are cited to a number of cases which were suits on bonds and involved the legality of subscriptions made by counties to railroad corporations. In some of the cases the subscriptions were made to this consolidated company, but we do not see that any of them are decisive of the question in hand. It must be kept in mind that exemption from taxation will not be recognized, unless granted in terms too plain to be mistaken. *C. B. & K. C. Railroad v. Guffy*, 120 U. S. 568; *City of St. Louis v. Boatman's Ins. & Trust Co.*, 47 Mo. 150, 155. Such an exemption is a personal privilege, and cannot be assigned except by legislative authority. *State ex rel. v. Railroad*, 89 Mo. 536. If the consolidated company is in any sense a new corporation, taking its powers to be a corporation and its privileges from the act of 1869, then it cannot in justice claim the exemption; for the legislature was powerless to make new grants of that charter. It seems to us the tax cases before cited are quite conclusive.

The answer sets up the proceedings in the suit of *Scotland County v. The Missouri, Iowa & Nebraska Railway Company*, before mentioned and reported in 65 Mo. 123. That suit was commenced in 1873 to recover county and school taxes levied for the year 1872. The judgment, which was for defendant, was affirmed in

1877. It is also alleged in the answer, and not denied, that James Secor and others, stockholders in the consolidated company, filed their bill in the circuit court of the United States for the eastern district of Missouri to enjoin the company from paying taxes levied by Scotland, Clark and Schuyler counties, and to enjoin the county courts, judges thereof and collectors of said counties from collecting any taxes levied upon the property of the company for the year 1881, or previous years, and that the temporary injunction was made perpetual on the ground that the property of the company was exempt from taxation. According to the answer, the bill was filed in 1881. The case seem to have been determined in 1881. *Secor v. Singleton*, 9 Fed. Rep. 809.

The taxes sued for here are for the year 1886, and they accrued long after those suits were commenced and determined. This suit is for a separate and distinct cause of action, and, for this reason, we do not see how the former judgments can be a bar to the prosecuting of this suit. *City of Davenport v. Railroad*, 38 Iowa, 683. But we do not understand it to be claimed by the defendant, in this court, that those former judgments operate as a technical bar. The claim is, that rights have been acquired on the faith of the ruling in the Scotland county case, followed in the injunction case, and to make a different ruling at this time would be to impair the obligation of contracts, and therefore violative of the constitution of the United States. The answer to this is that this court did not then pass upon the question, whether the exemption from taxation passed to the consolidated company. The question of law was doubtless involved in the agreed facts in that case, but there were many other questions then controverted, and they were decided, and we adhere to what was then said in respect of the propositions of law which were actually considered. It seems to have been asserted

on one side and conceded on the other, in this court at least, that the exemption did pass to the consolidated company, if the exemption clause in the Alexandria and Bloomfield Company had not been repealed, and the court simply stated the question as not a controverted one in that case. All this appears from the decision itself, and we do not see·how it can be said the question which we have been considering was decided in that case. The proposition that the legislature can, in the face of the constitution of 1865, exempt property from taxation is not to be regarded as established because of a concession made by counsel in some former case. It cannot be fairly said there was a solemn adjudication upon the point we have been considering.

The judgment is affirmed. RAY, C. J., absent; the other judges concur.