# ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* BERRY & Another, Railroad Commissioners.

IN ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

Submitted January 7, 1885.—Decided March 2, 1885.

A consolidation of two railway companies by an agreement which provides that all the property of each company shall be taken and deemed to be transferred to the consolidated company (naming it) "as such new corporation without further act or deed," creates a new corporation, with an existence dating from the time when the consolidation took effect, and is subject to constitutional provisions respecting taxation in force in the State at that time.

One section in the charter of a railway company authorized it to consolidate with other companies. Another section provided that the "capital stock and dividends of said company shall be forever exempt from taxation ; the road, fixtures and appurtenances shall be exempt from taxation until it pays an interest of not less than ten per cent. per annum." *Held,* That a new company, created by the exercise of the power to consolidate, took the property and franchises of the old company subject to the organic law as to taxation at the time of the consolidation.

This was a writ of error to review the action of the Supreme Court of Arkansas in refusing to restrain officers of that State from levying a tax on property of the plaintiff in error. The grounds on which exemption from taxation was claimed, and on which a Federal question was raised, are stated in the opinion of the court.

*Mr. J. H. McGowan, Mr. A. T. Britton, Mr. A. B. Browne,* and *Mr. John F. Dillon* for plaintiff in error.

*Mr. U. M. Rose* for defendants in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The legislature of Arkansas passed an act, January 12, 1853, to incorporate the Cairo and Fulton Railroad Company, with power to construct, maintain, and operate a railroad from a point on the Mississippi River opposite the mouth of the

Ohio, in the State of Missouri, by way of Little Rock, to the Texas boundary line, near Fulton, in Arkansas, with one or more branches to the western boundary line of that State, with the view of entering the northeastern and the northwestern portions of Texas, and there connecting with projected railroads in that State, from the Bay of Galveston, running up the valleys of the Brazos and Trinity Rivers, and with power to construct branches to any other point or points within the State of Arkansas. The capital stock of the company was fixed at $1,500,000, to be increased from time to time to any sum not exceeding the entire amount expended on account of said road.

The act contained the following sections:

" SEC. 10. Said corporation shall have power to unite their road with the southern end of the Missouri road, at some suitable point on the line which divides these two States, and its southern end with any road coming in from Texas, at such point on the boundary line which divides that State and Arkansas that may be deemed most eligible, and to make any contract or agreement with any other railroad company in reference to their business that may best insure the early construction of said road and its successful management, and also to make joint stock with any other railroad company in this or any other State, and to form one board of directors for the management of their affairs. If it should be found necessary to facilitate the early construction of their said road, the contract or agreement of the respective boards shall form a part of their respective charters, whenever the same may be entered into and recorded with their charters.

" SEC. 11. That the capital stock and dividends of said company shall be forever exempt from taxation; the road, fixtures, and appurtenances shall be exempt from taxation until after it pays an interest of not less than ten per cent. per annum.

" SEC. 13. This act shall be deemed a public act, and shall be favorably construed for all the purposes therein expressed, and declared in all courts and places whatsoever, and shall be in force from and after its passage: *Provided*, That all the rights, privileges, immunities and franchises contained in the

charter granted at this session of the legislature of this State to 'The Mississippi Valley Railroad Company,' and not restricting or inconsistent with this act, are hereby extended to and shall form a part of this incorporation as fully as if the same was inserted herein."

The reference to the charter of the Mississippi Valley Railroad Company need not be further considered, as it does not seem to be material in the present controversy. *Railway Co.* v. *Loftin*, 98 U. S. 559.

At the time of the passing of the act incorporating the Cairo and Fulton Railroad Company the Constitution of Arkansas contained no restriction upon the power of the legislature to grant such an exemption from taxation as the charter contains. But the Constitution of the State, which took effect April 1, 1868, and was in force until October, 1874, contained the following provisions:

"The General Assembly shall pass no special act conferring corporate powers. Corporations may be formed under general laws, but all such laws may from time to time be altered or repealed." Article 5, section 48.

"The General Assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens." Article 1, section 18.

"The property of corporations now existing or hereafter created shall forever be subject to taxation the same as property of individuals." Article 5, section 48.

On July 23, 1868, an act was passed by the General Assembly of the State of Arkansas "to provide for a general system of railroad incorporation," in which is the following:

"SEC. 43. Any railroad company now chartered under existing laws, or which may hereafter become incorporated under this law, shall have power and authority to purchase and hold any connecting railroad and operate the same, or to consolidate their companies and make one company, under the name of one or both or any other name; but when such purchase is made or consolidation is effected the said company shall have and be entitled to all the benefits, rights, franchises, lands and

tenements, and property of every description, belonging to said road or roads so sold or consolidated, and shall be liable to all the pains and penalties imposed by their respective charters."

On January 1, 1874, the main line of the Cairo and Fulton Railroad Company was completed and was in actual operation; but the branches authorized by the charter were not completed until after the consolidation between that company and the St. Louis and Iron Mountain Railroad Company, a corporation of Missouri, which took effect on May 4, 1874, and resulted in the formation of the St. Louis, Iron Mountain and Southern Railway Company, the complainant and plaintiff in error in this suit.

This consolidation was effected by means of certain proceedings and an agreement between the parties, the parts of which, pertinent to the present controversy, are as follows:

The board of directors of the Cairo and Fulton Railroad Company, on May 4, 1874, adopted these resolutions, viz.:

"*Resolved*, That this company will enter into an agreement with the St. Louis and Iron Mountain Railroad Company for uniting and consolidating this company with the said St. Louis and Iron Mountain Railroad Company, and for making joint stock of the two companies and forming one board of directors for the management of the affairs of said companies, on the basis jointly recommended by the committees on consolidation, and embraced in the agreement executed by the said St. Louis and Iron Mountain Company, and now here submitted for execution on the part of this company.

"*Resolved further*, That the president of this company be, and he is hereby, authorized and directed to execute the agreement submitted, to be, however, subject to the approval and confirmation of the stockholders of this company, called to be holden on Monday, the 4th day of May inst., or any other day thereafter, and when approved that the president cause the same to be carried into effect, and call in the certificates of stock in this company outstanding, and exchange them for stock in the new company according to the terms of the agreement."

The agreement of consolidation referred to was approved and adopted by the stockholders of the company on the same day. It purports to be an agreement entered into April 13, 1874, between the St. Louis and Iron Mountain Railroad Company, a corporation organized and existing under and by virtue of the laws of the State of Missouri, party of the first part, and the Cairo and Fulton Railroad Company, a corporation organized and existing under and by virtue of the laws of the State of Arkansas, party of the second part. It recites that—

"Whereas the party of the first part owns and operates a line of railroad extending from the city of St. Louis southward to the boundary line between the States of Missouri and Arkansas, where it intersects the railroad of the party of the second part; it also owns and operates a line of railroad running from Bismarck to Belmont, and also owns and operates a line of railroad running from Poplar Bluff eastward to the Mississippi River, at a point opposite the mouth of the Ohio River, and a branch railroad from Mineral Point to Potosi, all in the State of Missouri. And the party of the second part owns and operates a line of railroad extending from the boundary line between the States of Missouri and Arkansas, where it forms a junction with the line of railroad of the party of the first part, through the cities of Little Rock and Fulton, to the town of Texarkana, upon the boundary line between the States of Arkansas and Texas, and the said railroads form continuous and connecting lines of railroad with each other so connected as to admit the passage of burden and passenger cars over each continuously without change, break, or interruption.

"And whereas the said parties are authorized by the laws of the several States aforesaid to consolidate their capital stock, franchises and property together, and become one corporation; and it is believed that such consolidation will be beneficial to the stockholders of each of said corporations and to the public,

"Now, therefore, this agreement witnesseth that the said parties of the first and second parts hereto, by their respective boards of directors, duly convened, have agreed, and do hereby

agree, to merge and consolidate the capital stock, franchises, and property of the said two corporations, so that the same shall become the capital stock, franchises, and property of one corporation; and for that purpose do hereby make and prescribe the following terms and conditions of such merger and consolidation, and the mode of carrying the same into effect."

It then provides that the name of the new corporation shall be " St. Louis, Iron Mountain and Southern Railway Company;" prescribes the number of the directors and officers, and the names of those who " shall be the first directors of the new corporation;" fixes the amount of the capital stock of the corporation at $26,500,000, divided into shares of $100 each, and provides that—

" Every stockholder in each of the corporations, parties hereto of the first and second parts, shall receive, in place of stock held by him in said corporations, stock in the new corporation as follows, to wit, for each share of stock held in the St. Louis and Iron Mountain Railroad Company, he shall receive one share of stock in the ' St. Louis, Iron Mountain and Southern Railway Company;' and for each share of stock held in the Cairo and Fulton Railroad Company, he shall receive sixty-hundredths of one share in the St. Louis, Iron Mountain and Southern Railway Company."

The sixth article of the agreement is as follows:

" Sec. 1. Upon the making and perfecting of this agreement and act of consolidation, and upon the adoption and ratification thereof by two-thirds of the votes of all the stockholders of the respective corporations parties hereto, and upon the filing of the same, or a copy thereof, in the manner prescribed by law, the parties hereto shall be deemed and taken to be one corporation by the name provided in this agreement, and shall possess within the several States into and through which its railroad, or any part thereof, or its branches or leased lines, may run, all the rights, privileges, and franchises of each of the said corporations so consolidated.

" Sec. 2. Upon the consummation of said act of consolidation, as provided by law, all and singular the rights, privileges, and franchises of each of said corporations parties hereto, and

all other property, real, personal, and mixed, and all debts due on whatever account, as well stock subscriptions as all other things in action belonging to each and every of said corporations, parties hereto, shall be taken and deemed to be transferred to and vested in the 'St. Louis, Iron Mountain and Southern Railway Company,' as such new corporation, without further act or deed, and all property, all rights of way, and all and every other interest shall be as effectually the property of this new corporation, without further conveyance or assurance, as they were of the former corporations parties hereto; and all rights of creditors, and all liens upon the property created by either of the said corporations, shall be preserved unimpaired, notwithstanding said merger and consolidation, and all debts, liabilities, obligations, and duties, of either of said corporations parties hereto, shall thenceforth attach to the said new corporation and be enforced against it to the same extent and in the same manner as if said debts, liabilities, obligations, and duties had been incurred or contracted by it.

"And the board of directors of said company shall have full power and authority to borrow such sums of money, and in such form, as they may deem proper, to pay off the present debts and liabilities so assumed by the corporation hereby created, and to meet other exigencies of the company, and to secure the payment thereof by a mortgage or mortgages on the property and franchises of said company or any part thereof.

"The by-laws which may be adopted by concurrent resolution of stockholders' meetings of said companies, parties hereto, shall be the by-laws of said consolidated company, subject to repeal or amendment as therein or by law provided."

The consolidated company, organized under this agreement, claims that it is entitled, under the provisions of the charter of the Cairo and Fulton Railroad Company, to the exemption from taxation contained in the eleventh section of that act. It accordingly filed its bill in equity in the Chancery Court of Pulaski County to restrain the defendants, the defendants in error, who were the railroad commissioners of the State, from proceeding to assess for taxation, under the provisions of "An Act to revise and amend the revenue laws of Arkansas," ap-

proved March 31, 1883, the railroad of the company in the State of Arkansas, alleging that "its road was completed on the 5th day of December, 1873; that it does not now, and never had, paid an interest of ten per cent. per annum, nor has any dividend ever been realized or declared on its capital stock."

A decree dismissing the bill was rendered on final hearing in the Chancery Court, on two grounds—that the complainant company was not entitled to the benefit of the exemption contained in the eleventh section of the charter of the Cairo and Fulton Railroad Company, and that, if it were otherwise, the exemption would not apply, for the reason that the court found upon the testimony that the earnings of the road in Arkansas had been, and were for the year 1882, more than ten per cent. on the cost of its construction and equipment. On appeal to the Supreme Court of Arkansas, this decree was affirmed on the single ground that the complainant company was not entitled to the benefit of the exemption from taxation claimed by it. In reference to the other question the court said: "What we have already said renders it unnecessary to go into this question. In the very nature of things it is impossible to do more than guess at it. It appears by the plaintiff's own proofs that the officers cannot tell, save by an approximation, what the actual earnings of this part of the road are." To reverse this decree the present writ of error is prosecuted.

The main point urged in argument in support of the claim of the plaintiff in error to the exemption from taxation is, that the consolidation of the Cairo and Fulton Railroad Company with the St. Louis and Iron Mountain Railroad Company was the exercise of a right, on the part of the former, plainly and expressly conferred by the tenth section of its charter, and not in anywise inconsistent with the continued force of the exemption contained in the eleventh section, which referred as well to the company when it had become a constituent of a consolidated company under the previous section, as to the same company in its original form and organization; so that the terms of the exemption, which, it is not denied, is a valid

contract protected against subsequent legislation by the Constitution of the United States, apply to the plaintiff in error, as a party directly embraced within its words and meaning.

To this view several objections are suggested.

It is said, in the first place, that the authority "to make joint stock with any other railroad company in this or any other State, and to form one board of directors for the management of their affairs," notwithstanding the punctuation which separates the sentence from the following words—"If it should be found necessary to facilitate the early construction of their said road"—yet, nevertheless, is necessarily connected with them in sense, and must be limited by them; that a consolidation, not effected until after the complete construction of the road, is not embraced within the authority conferred; and that, consequently, the consolidation, as made in 1874, must be referred to the forty-third section of the general act of 1868, and subject, therefore, to the restrictions of the State Constitution then in force, forbidding the exemption of corporate property from taxation.

But to this it is replied that the forty-third section of the act of 1868 does not authorize a consolidation of domestic with foreign corporations, and applies to the former alone; and that, consequently, the consolidation now the subject of discussion, if it cannot be referred to the tenth section of the charter of the Cairo and Fulton Railroad Company, must fail altogether.

It is next objected, however, that, admitting the consolidation to have been effected, as claimed by the plaintiff in error, under the provisions of that charter, the language of the exemption in the eleventh section cannot be applied to the consolidated company. The words of that section exempt forever from taxation the capital stock and dividends "of said company," which would seem to imply the continued separate existence of the company as originally organized, and not properly to refer to a capital stock representing a consolidated company, owning and operating a railroad in several States. But "the road, fixtures, and appurtenances" are declared to be exempt from taxation only "until after it," that is, the company, "pays an interest of not less than ten per cent. per

annum." And it is argued that this exemption necessarily implies that the property and operations of the company shall be preserved separate from those of any other, so that, at all times, it may be ascertained, by an inspection of accounts, whether the earnings equal an interest of ten per cent. per annum; a separation, it is insisted, which is inconsistent with a consolidation such as took place. And the case, it is said, is thus brought within the principle of the decision in *Railroad Company* v. *Maine*, 96 U. S. 499.

We do not find it necessary to pass upon either of these questions, however, as there is a distinct ground, which is conclusive of the controversy, upon which we prefer to rest our decision.

We assume that the consolidation as made was authorized by, and must be referred to, the tenth section of the charter of the Cairo and Fulton Railroad Company; but we do not admit, what is assumed as an inference from that, that the consolidation took effect, by relation, as of the date of that charter.

The consolidated company, the St. Louis, Iron Mountain and Southern Railway Company, the plaintiff in error, is not the identical corporation which was the Cairo and Fulton Railroad Company. The terms of the act and agreement of consolidation, which, by the express language of the charter of the Cairo and Fulton Railroad Company, became on adoption the charter of the consolidated company, created a new corporation.

It is spoken of as "the new company" in the resolutions of the board of directors, submitting the agreement to the stockholders for their approval, and directing the president to cause the same to be carried into effect, when approved, by calling in "the certificates of stock in this company outstanding," and exchanging them "for stock in the new company, according to the terms of the agreement." The two corporations agree to become one corporation, and a new name is given to the "new corporation." It is spoken of as such throughout the agreement of consolidation. The whole organization is changed and made new. The capital stock is made different from that

of either, or the aggregate of both, each share of stock held in the Cairo and Fulton Railroad Company being exchanged for sixty-hundredths of a share in the St. Louis, Iron Mountain and Southern Railway Company. The act of consolidation is declared to be a conveyance of all the rights, privileges and franchises of each of the constituent corporations, and of all other property, real, personal and mixed, and all debts due, on whatever account, belonging to each corporation, to the new corporation, without further act or deed.

This new corporation did not come into existence until May 4, 1874. It came into existence as a corporation of the State of Arkansas in pursuance of its Constitution and laws, and subject in all respects to their restrictions and limitations. Among these was that one (Art. 5, sec. 48 of the Constitution of 1868) which declared that "the property of corporations, now existing or hereafter created, shall forever be subject to taxation the same as property of individuals." This rendered it impossible in law for the consolidated corporation to receive by transfer from the Cairo and Fulton Railroad Company or otherwise the exemption sought to be enforced in this suit. The case is thus brought within the rule declared and applied in *Louisville, &c., Railroad Co.* v. *Palmes*, 109 U. S. 244.

It is not an answer to this conclusion to say that the act of consolidation, having been made in pursuance of the tenth section of the charter of the Cairo and Fulton Railroad Company, was the exercise by that company of a right secured to it by contract which no subsequent Constitution or law of the State of Arkansas could impair or defeat. For what was the contract? Construed in the most liberal spirit in favor of the company, it cannot be extended beyond a stipulation on the part of the State, that the Cairo and Fulton Railroad Company may at any time thereafter, by consolidation with any other railroad company, form and become a new corporation, with such powers and privileges as, at the time when the offer is accepted and acted upon it may be within the power of the State to confer, and lawful for the new corporation to accept. If acted upon before the law was changed, it might well be that all the powers and privileges originally conferred in the char-

ter of the Cairo and Fulton Railroad Company, including the exemption in question, would have vested in the new company. But, as it was not accepted and acted upon until a change in the organic law of the State forbade the creation of corporations capable of holding property exempt from taxation, it must be presumed that when the original company entered into the consolidation it did so in full view of the existing law, and with the intention of forming a new corporation, such as the Constitution and laws of the State at that time permitted. That, at least, we must hold to be the legal effect of the transaction. In that view, the language used by this court at the present term in the case of the *Memphis and Little Rock Railroad Co. (as reorganized)* v. *Berry et al.*, 112 U. S. 609, is strictly applicable and is now re-affirmed.

The conclusion is unavoidable, that the exemption from taxation declared in the eleventh section of the charter of the Cairo and Fulton Railroad Company did not pass by the act of consolidation to the St. Louis, Iron Mountain and Southern Railway Company.

The judgment of the Supreme Court of Arkansas is therefore

*Affirmed.*