KEOKUK & W. R. Co. *v.* COUNTY COURT OF SCOTLAND Co. *et al.*

(*Circuit Court, E. D. Missouri, N. D.*  January 28, 1890.)

1. RAILROAD COMPANIES—CONSOLIDATION—EXEMPTION FROM TAXATION.
    A consolidation of two railroad companies under the Missouri consolidation act of March 2, 1869, operates as the creation of a new corporation, wholly distinct from the constituent corporations out of which it is formed, which new corporation derives its powers and franchises from the consolidation act; and since Const. Mo. 1865, art. 11, § 16, prohibiting legislative exemption from taxation, was adopted before the passage of the act, the consolidated corporation does not acquire the immunity from taxation granted in 1857 to one of its constituent corporations. *State v. Railroad Co.,* 12 S. W. Rep. 290, followed.

2. COURTS—FEDERAL COURTS—FOLLOWING DECISIONS OF STATE COURT.
    The fact that the supreme court of Missouri in a former decision, in which the exemption of the consolidated corporation was not a controverted question, assumed that it was exempt, which decision was followed by this court in a case wherein no questions were considered except such as had been previously considered by the state supreme court, does not establish a settled rule of property, to which this court is bound to adhere.

In Equity. On bill for injunction.

*F. T. Hughes,* for complainant.

*John C. Moore, T. S. Montgomery,* and *Anderson & Schofield,* for defendants.

THAYER, J. This is a proceeding begun on February 13, 1888, against the county courts of Scotland, Clark, and Schuyler counties, Mo., and against the several persons who at that time were judges of said courts, and also against the several collectors of revenue for said counties, to restrain them from collecting, or attempting to enforce the collection of, certain taxes assessed against a certain railroad extending through the counties aforesaid, which at the date of the filing of the bill belonged to

and was being operated by complainant, the Keokuk & Western Railroad Company. The property in question formerly belonged to the Missouri, Iowa & Nebraska Railway Company. Complainant acquired title thereto and possession on December 3, 1886, by virtue of foreclosure proceedings under a mortgage executed by the Missouri, Iowa & Nebraska Railway Company. The taxes in dispute had been assessed during the ownership of the mortgagor company, and complainant's contention is, in brief, that the property in question was exempt from taxation while owned by the mortgagor company. That it was exempt from assessment after the purchase by the Keokuk & Western Railroad Company is not claimed. Six months before the present bill was filed suit was instituted against the complainant in the state circuit court, under the revenue laws of the state, to recover a portion of the same taxes that form the subject of contention in this proceeding. That suit has recently been decided by the supreme court of the state, and it was held, in an elaborate opinion, that that portion of complainant's railroad situated in the counties of Clark, Scotland, and Schuyler, in this state, was not exempt from taxation while owned by the Missouri, Iowa & Nebraska Railway Company. *State* v. *Railroad Co.*, 12 S. W. Rep. 290.

The facts on which the claim of exemption from taxation is predicated are fully stated in the opinion last referred to. It will suffice to say that the exemption claimed was contained in a special charter granted to the Alexandria & Bloomfield Railroad Company, on the 9th of February, 1857, (Sess. Laws Mo. 1857, p. 94;) that the last-named company, by legislative permission, first changed its name to the Alexandria & Nebraska Railroad Company, and thereafter, on May 3, 1870, became consolidated with the Iowa Southern Railway Company, a corporation of Iowa, under the name of the Missouri, Iowa & Nebraska Railway Company; and that the consolidation proceedings were had under the provisions of a law enacted in the state of Missouri on March 2, 1869, (Sess. Laws Mo. 1869, p. 75.) The supreme court of the state decides, in effect, that the consolidation proceedings operated as a surrender of the immunities and franchises of the Alexandria & Bloomfield Railroad Company, to which the exemption was originally granted, and to dissolve that corporation; that, by virtue of the consolidation proceedings, a new corporation was created, which derived all of its powers and franchises in Missouri from the consolidation act of 1869; and that, inasmuch as that act was passed after the adoption of the constitution of 1865, which prohibited legislative grants of exemption from taxation, (section 16, art. 11,) no immunity from taxation was or could be acquired by the Missouri, Iowa & Nebraska Railway Company, by virtue of the consolidation act in question. The decision is therefore conclusive of the present controversy, if it is followed.

I have assumed, in accordance with what seems to be the doctrine established by the case of *Railroad Co.* v. *Palmes*, 109 U. S. 256, 3 Sup. Ct. Rep. 193, as well as by the case of *Burgess* v. *Seligman*, 107 U. S. 33, 2 Sup. Ct. Rep. 10, that this court is entitled to express an independent judgment upon the questions involved, giving to the decision of the state

court, as a matter of course, the weight and respectful consideration, as an authority upon the points involved, that the decisions of such courts are always entitled to.

There seems to be no adequate ground for dissenting from the conclusion reached by the state supreme court in the case above referred to, that the result of the consolidation proceedings which took place on May 3, 1870, was to create a new corporation under the name of the Missouri, Iowa & Nebraska Railway Company, that derived its powers and franchises from the consolidation act of March 2, 1869, *supra*. The general disposition of both the federal and state courts seems to be, to regard consolidation proceedings, taken under such laws as that which prevails in Missouri, as operating to create a new corporation wholly distinct from the constituent corporations out of which it is formed, and with powers and franchises derived from the act under which the proceeding is taken, and from such other general laws prescribing the powers of corporations as at the time prevail in the state. In addition to the authorities cited on this point in *State* v. *Railroad Co.*, *supra*, the following cases may be consulted with advantage: *Railway Co.* v. *Berry*, 113 U. S. 465, 5 Sup. Ct. Rep. 529, and *Memphis & L. R. R. Co.* v. *Commissioners*, 112 U. S. 609, 5 Sup. Ct. Rep. 299.

Conceding that the Missouri, Iowa & Nebraska Railway Company was a new corporation formed on May 3, 1870, and that the proceeding of that date was not a mere alliance between two old corporations, or a merger of the powers of the Iowa corporation with the Missouri corporation under the charter of the latter, the conclusion also seems inevitable, considering the federal decisions on the subject, that the new or consolidated company did not acquire the immunity from taxation originally granted, in 1857, to the Alexandria & Bloomfield Railroad Company. The law is well settled since the decision in *Morgan* v. *Louisiana*, 93 U. S. 217, that exemptions from taxation must be construed as a personal privilege granted to the very corporation named in the grant, and to have perished with it, unless the express and clear intention of the law requires that it should pass to an assignee or successor; and all grants of that character are to be construed *strictissimi juris*. *Memphis & L. R R. Co.* v. *Commissioners*, *supra*. In the case of *Railway Co.* v. *Berry*, 113 U. S. 465, 5 Sup. Ct. Rep. 529, it appeared that a railroad corporation of the state of Arkansas had been created in 1853, with an exemption from taxation, and also with a power under its charter to consolidate with other foreign railroad corporations under such an agreement as it deemed advisable. It executed the charter power of consolidation on May 4, 1874, by consolidating with a Missouri corporation. The agreement of consolidation provided that "all the rights, privileges, and franchises of each of the corporations" should pass to the consolidated company. In the mean time, however, (in 1868,) the constitution of the state of Arkansas had been amended so as in effect to prohibit exemptions from taxation, and to subject all property to like burdens. It was held by the court that, inasmuch as a new corporation had been created by the amalgamation of the two corporations, the consolidated company was subject

to all laws relating to taxation in existence when the consolidation took place, and hence was not entitled to any immunity from taxation with respect to the property acquired from the original Arkansas corporation. Concerning the nature of the contract between the state and the original company, granting to the latter the right to consolidate and immunity from taxation, the court said:

"For what was the contract? Construed in the most liberal spirit in favor of the company, it cannot be extended beyond a stipulation on the part of the state that the Cairo & Fulton Railroad Company may at any time thereafter, by consolidation with any other railroad company, form and become a new corporation, with such powers and privileges as, at the time when the offer is accepted and acted upon, it may be within the power of the state to confer and lawful for the new corporation to accept. If acted upon before the law was changed, it might well be that all powers and privileges originally conferred in the charter of the Cairo & Fulton Railroad Company, including the exemption in question, would have vested in the new company. But as it was not accepted and acted upon until a change in the organic law of the state forbade the creation of corporations capable of holding property exempt from taxation, it must be presumed that, when the original company entered into the consolidation, it did so in full view of the existing law, and with the intention of forming a new corporation, such as the constitution and laws of the state at that time permitted. That, at least, we must hold to be the legal effect of the transaction."

In the case at bar it will be noted that the Alexandria & Bloomfield Railroad Company was not accorded the right to consolidate by the charter of 1857. That right was granted on March 2, 1869, after the change in the Missouri constitution prohibiting corporate exemptions from taxation. With much greater force, then, may it be said that the right to consolidate, held out by the Missouri act of 1869, was a right to consolidate subject to then existing laws as to taxation. If it be urged, in opposition to this reasoning, that the offer held out by the act of 1869 was an offer to consolidate, and at the same time to retain the exemption theretofore enjoyed, the answer thereto is twofold. In the first place, the act of 1869 contains no apt language to include the exemption in question. Exemptions from taxation are properly classed as immunities, rather than as privileges or franchises, and the act of 1869 merely promised that the new company formed should "be entitled to the same privileges and franchises" as the Alexandria & Bloomfield Railroad Company. Vide section 4, Act March 2, 1869. This point was expressly ruled in the case of Railway Co. v. Miller, 114 U. S. 176, 5 Sup. Ct. Rep. 813, where the words, "shall succeed to all such franchises, rights, and privileges * * * as would have been had," etc., were held not to include and pass an immunity from taxation. But a better answer to the objection last supposed is, that the general assembly of the state of Missouri, after the adoption of the constitution of 1865, had no power to promise to a new corporation to be thereafter formed, that it would renew in its favor, an exemption theretofore enjoyed by one of the constituent corporations that was to become dissolved by the act creating the new entity; and this point has also been expressly ruled in the case of Railroad Co. v. Palmes, 109 U. S. 244, 3 Sup. Ct. Rep. 193. Speaking

of a similar prohibition to that found in the Missouri constitution of 1865, in a case that arose in the state of Florida, where an attempt had been made by the legislature of that state to renew or extend to a subsequent corporation an exemption from taxation possessed by a former corporation whose property it had acquired, the court say:

"The inhibition of the constitution applies in all its force against the renewal of an exemption equally as against its original creation. * * * After the adoption of the constitution of Florida of 1868, there could be no corporation created capable in law of accepting and enjoying such an exemption, for that was prohibited by the constitutional provisions that have been cited." Pages 254, 255.

Strictly in line with the decision in *Railway Co.* v. *Berry, supra,* is the previous decision in *Memphis & L. R. R. Co.* v. *Commissioners,* 112 U.S. 609, 5 Sup. Ct. Rep. 299, heretofore cited. In the latter case a corporation was created in 1853 by the state of Arkansas with an exemption from taxation, and with authority to mortgage its charter. The charter having been mortgaged and sold under a decree of foreclosure, the purchasers organized as a corporation under the same, claiming all of the franchises and immunities specified therein, including the exemption from taxation. The court held, among other things, that even if the sale under the mortgage conveyed to the purchasers the right to organize as a corporation, or to become a corporation, it was merely a right to organize under such laws as might be in force when the organization took place; that such an organization would be a corporate entity, distinct from that which originally organized and executed the mortgage; and a company so formed by purchasers would be subject to taxation according to the laws in force when such organization took place, and that the immunity from taxation granted in the charter of 1853 was limited to the corporate body that first organized thereunder. It seems unnecessary to pursue the subject further. If the question whether the Missouri, Iowa & Nebraska·Railway Company acquired an immunity from taxation, is still an open question, and is to be determined in the light of federal adjudications, I feel confident that the exemption cannot be sustained.

It is insisted, however, that the exemption was heretofore upheld by the supreme court of this state in the case of *Scotland Co.* v. *Railway Co.,* 65 Mo. 123; that a similar ruling was afterwards made by this court in *Secor* v. *Singleton,* 9 Fed. Rep. 809; and that the question has been settled in this state by these decisions, and is not open to further controversy. It is not asserted, however, (as I understand,) that the judgment referred to in the state court, or the decree in the federal court, operates as an estoppel in this proceeding, so as to preclude the defendants from denying that the Missouri, Iowa & Nebraska Railway Company was entitled to an immunity from taxation. The filing of the present bill by the complainant would seem to be an admission by it, that the decree of this court in the *Secor Case* is not available for its protection. But the contention is that the judgment and decree in the two cases established a rule of property on the faith of which complainant has acted, and hence that the rule cannot be disturbed, even though it is erroneous, accord-

ing to the principles announced in *Gelpcke* v. *Dubuque*, 1 Wall. 206, and in *Burgess* v. *Seligman*, 107 U. S. 20, 2 Sup. Ct. Rep. 10, and cases cited: It is questionable whether the doctrine invoked can properly be applied to a case like the one at bar, under any circumstances. To say that, because a state court has once decided that a certain corporation is entitled to exemption from taxation, the decision must thereafter be followed, although erroneous, would involve consequences of such a serious nature that any court ought to hesitate to give its assent to such a doctrine. The exemption claimed and upheld might be a perpetual one, affecting property of the value of millions of dollars. The bare statement of the proposition that the sovereign power of taxation might be irrevocably lost in such a case, by an erroneous decision on a point not well argued or carefully considered, would seem to be its own refutation. In the present case, however, it is clear that the decisions relied upon did not establish a settled rule of property, within the meaning of the doctrine invoked. In the case of *Scotland Co.* v. *Railway Co.*, *supra*, the supreme court of the state evidently did not consider the question whether an exemption from taxation passed to the consolidated company, because it was not a controverted question in that court. The fact that the exemption was acquired by the consolidated company seems to have been taken for granted, for the reason that counsel in the case so assumed, or at least raised no issue on that point. The case of *Secor* v. *Singleton*, subsequently tried in this court, passed off on demurrer; the ruling on the demurrer having been followed by a decree *pro confesso* taken against the defendants. It is obvious that no questions were considered in the *Secor Case* except such as had previously been considered by the supreme court of the state. The only allusion to the question of exemption is found in the following paragraph of Judge TREAT's opinion. Referring to the demurrer, he said:

"It was interposed, obviously, for mere delay, inasmuch as the only legal question involved had been decided, as set out in the bill, (65 Mo. 123,) adversely; which decision this court recognizes as conclusive on a question of state taxation." 9 Fed. Rep. 810.

Under the circumstances, it cannot be admitted that the decisions in question established a settled rule of property to which this court, any more than the state court, is bound to adhere. In the case of *Railroad Co.* v. *Palmes*, 109 U. S. 256, 257, 3 Sup. Ct. Rep. 193, the supreme court of the United States refused to recognize a previous decision of the supreme court of Florida, which had incidentally upheld a corporate exemption from taxation, as establishing a rule of property such as the federal courts are bound to uphold; and what was there said, considering the circumstances under which the decision of the Florida court had been rendered, is strictly applicable to the case at bar. The court accordingly concludes that the rule to show cause why an injunction should not issue (which was heretofore entered in this suit) ought to be discharged, and an injunction refused. It is so ordered. It will be understood, of course, that the court intends to express no opinion as to the effect of the decree in the *Secor Case*, which has now become final, further than,

as heretofore stated; that it cannot be regarded as working an estoppel in this proceeding. Whatever rights were secured by that decree must, of course, be enforced as between parties now entitled to the protection of the decree.