## WINN et al. v. WABASH R. CO.

(Circuit Court, W. D. Missouri, W. D. October 10, 1902.)

1. RAILROADS—CONSOLIDATION—CITIZENSHIP OF CONSOLIDATED COMPANY—FEDERAL COURTS—JURISDICTION—REMOVAL OF CAUSE.

Rev. St. Mo. 1899, § 1059, authorizes the consolidation of railroad companies in the state, where the consolidation will form a continuous line, subject to all the obligations and liabilities which belong to either of the companies making the consolidation. Section 1060, providing for aid between railroads, authorizes the buying, leasing, or consolidating of railroads within the state, and declares that companies so sold, leased, or consolidated shall exercise all rights, powers, and privileges conferred on state railroads, and "shall be subject to all the duties, liabilities, and provisions of the laws of this state concerning railroad corporations as fully as if incorporated in this state." The Wabash Railroad was formed by consolidating four railroads, one of which existed and was incorporated in each of the states of Ohio, Illinois, Indiana, and Missouri. At a meeting of the stockholders of the four companies, held in Ohio, five consolidation agreements were executed, one of which was filed, as required by section 1059, in the office of the secretary of state of Missouri, and others were filed in the other states. *Held*, that the consolidated corporation thereby became a citizen of each of the states in which the articles were so filed, subject to its laws, and therefore such corporation is not entitled to remove an action arising in Missouri to the federal court on the ground that it is a resident of another state.

### On Plea to Jurisdiction after Removal from State Court.

The plaintiffs, citizens of the state of Missouri, instituted suit in the circuit court of Jackson county, Mo., on a cause of action which arose in the

state against the defendant as a common carrier. **On petition of the defendant,** alleging that it was a citizen of the state of Ohio, the cause was removed into this court. Plaintiffs filed a plea to the jurisdiction of the court, taking issue on the truth of the allegation that the defendant is a citizen of Ohio. The conceded facts respecting the formation of the defendant corporation are as follows:

In 1879 the Wabash Railway Company, a consolidated corporation of the states of Ohio, Illinois, and Indiana, was consolidated with the St. Louis, Kansas City & Northern Railway Company, a Missouri corporation, forming the Wabash, St. Louis & Pacific Railway Company. Among the earlier constituent corporations forming the Wabash Railroad Company was the Toledo, Wabash & Western Railway Company, an Ohio corporation, organized in 1853. In 1883 the Wabash, St. Louis & Pacific Railway Company went into the hands of receivers, appointed by the circuit courts of the United States for the Seventh and Eighth judicial circuits. The line was subsequently divided at the Mississippi river, and two receivers were appointed. Thomas M. Cooley, of Michigan, was appointed receiver of the lines east of the Mississippi river, who was succeeded in such receivership by General John McNulta, of Illinois. Solon Humphreys and Thomas E. Tutt were appointed receivers for the line west of the Mississippi river. In 1886 the property of the Wabash, St. Louis & Pacific Railway Company was sold at foreclosure sale; and the receivers on the west side of the Mississippi river were directed to turn over the property to a committee of bondholders, designated as the "Purchasing Committee," who purchased the property at the sale. The lines east of the Mississippi river were operated under that receivership until 1889, when the receiver was discharged and the property turned over to this same purchasing committee. In March, 1887, the Wabash Western Railway Company, a Missouri corporation, was organized under the laws of Missouri, and acquired the property formerly owned by the Wabash, St. Louis & Pacific Railway Company, by deed from said purchasing committee. This Missouri corporation paid a license fee to the state of Missouri. On the 13th day of March, 1889, a new corporation was formed in the state of Michigan, called the Detroit & State Line Wabash Railroad Company. On the 11th day of March, 1889, a new corporation was formed in the state of Illinois, called the Wabash Eastern Railroad Company of Illinois. On the 23d day of May, 1889, a new corporation was formed in the state of Indiana, called the Wabash Eastern Railway Company of Indiana. On the 23d day of May, 1889, a new corporation was formed in the state of Ohio, called the Toledo Western Railroad Company of Ohio.

Subsequently stockholders' meetings of these respective roads were held in Ohio, Michigan, Indiana, Illinois, and Missouri,—that of the Toledo Western Railroad Company on the 27th day of May, 1889; the Detroit & State Line Wabash Railroad Company on the 23d day of May, 1889; the Wabash Eastern Railway Company of Indiana on the 21st day of May, 1889; the Wabash Eastern Railroad Company of Illinois on the 21st day of May, 1889; the Wabash Western Railway Company of Missouri on the 23d day of May, 1889,—at which meetings of the stockholders the respective railroads assented to and authorized a consolidation of said railway companies and the formation of a new consolidated corporation to succeed them. The agreement for consolidation propounded by these several constituent roads recited that the railroads of the several parties thereto connected with each other, so as to constitute connecting lines, but were not competing or parallel lines, and that it was considered to be for the advantage of all parties thereto, as well as for the public, that said several lines, franchises, and capital stock of all the corporations should be united, consolidated, owned, and worked in common. After reciting the capital stock of the respective parties, divided into preferred and common stock, it is stated that the same had been deposited with said purchasing committee under the plan of reorganization, and that it was intended that the stock of said new consolidated corporation should be issued to the holders of such certificates to an amount equal to the stock as deposited by them, as being the persons entitled to the same, as the equitable owners of the stock subscribed for in each of the corporations in carrying out said plan of reorganization. The agreement

further recited that the terms and conditions thereof "shall be that from and after the consummation of this agreement and act of merger or consolidation by the corporations, parties hereto, and filing the same, duly certified, in the office of the secretary of state of each of the states hereinbefore mentioned, and a certified copy thereof in the office of the recorder of each of the counties through which said lines pass in the state of Illinois, said corporations, parties hereto, shall be deemed and taken to be one corporation, under the name and style of the Wabash Railroad Company." It was further provided that all the powers, privileges, franchises, etc., vested in each of said original corporations under their several charters of incorporation or laws of the several states, should thereby be transferred to and vested in said consolidated company, as well as all the other property, etc., of the respective companies, and "when this agreement shall be ratified by all the parties hereto, and copies filed with the secretary of state of the several states through which said roads pass, and in which the respective parties hereto were incorporated, be and become vested in the said consolidated company without any further or other deed, transfer, or conveyance in that behalf." It fixed the capital stock of the consolidated company at $52,000,-000, $24,000,000 of which should be preferred stock and $28,000,000 common stock. It provided as to how the certificates of stock deposited with the said purchasing committee should be exchanged for stock in the consolidated company. It then provided as to the mode of carrying the consolidation into effect. for the election of directors and other officers "of the new corporation provided for by this agreement," and for the time and place for the selection of such directors. "The directors thus chosen shall be directors of the consolidated corporation, and immediately upon the organization shall assume, enjoy, and possess all the powers, rights, and privileges now held or enjoyed by the board of directors of either of said corporations parties thereto, and thereupon forthwith all the property, rights, and franchises, of whatever name or nature, belonging to the parties of the first, second, third, fourth and fifth parts, or either of them, shall pass to and be vested in the said new corporation, and the five named corporations shall forever cease and determine." It was further provided that "five originals of these articles of consolidation shall be signed by the president, and attested by the secretary, and sealed with the corporate seal of each of the consolidating parties thereto, and this agreement shall be spread upon the records of each company, and agreed to by the stockholders of each of said companies, and one of said agreements of consolidation, or a certified copy thereof, filed with each of the secretaries of state of the states of Ohio, Michigan, Indiana, Illinois, and Missouri."

These articles of agreement were properly executed by the several constituent companies. a joint meeting was thereafter held in the state of Ohio pursuant to said agreement, and copies of the agreement were successively filed in said respective states; the filing with the secretary of state for the state of Missouri being prior in point of time to that of the filing with the secretary of Ohio. The $52,000,000 of stock were issued and distributed, $30,000,000 of which represented the interests of the Missouri constituent, and only $700,000 the Ohio constituent. As a similar question has arisen in the Eastern district of this state, it is important that it should be settled in the same way for both districts; and to insure more authoritative ruling thereon THAYER, Circuit Judge, and ADAMS and PHILIPS, District Judges, sat in the hearing of this case and unite in this opinion.

D. B. Holmes, for plaintiffs.

George S. Grover and C. N. Travous, for defendant.

Before THAYER, Circuit Judge, and PHILIPS and ADAMS, District Judges.

PHILIPS, District Judge (after stating the facts as above). The question to be answered, on the foregoing facts, is whether or not a suit instituted by a citizen of the state of Missouri in the state

court against the Wabash Railroad Company on a cause of action which arose in the state is removable into the United States circuit court on the ground that the Wabash Railroad Company is a citizen of the state of Ohio. It was conceded by both parties at the hearing that upon the completion of the agreement of consolidation the respective constituent corporations were dissolved and went out of legal existence, and eo instante the consolidated company, the Wabash Railroad Company, came into existence as a new corporation; and such is the law. Shields v. Ohio, 95 U. S. 319, 24 L. Ed. 357; Atlantic & G. R. Co. v. Georgia, 98 U. S. 359, 25 L. Ed. 185; Railway Co. v. Berry, 113 U. S. 465, 5 Sup. Ct. 529, 28 L. Ed. 1055; Railway Co. v. Miller, 114 U. S. 176, 5 Sup. Ct. 813, 29 L. Ed. 121; Keokuk & W. R. Co. v. Missouri, 152 U. S. 301, 14 Sup. Ct. 592, 38 L. Ed. 450; State v. Keokuk & W. Ry. Co., 99 Mo. 30, 12 S. W. 290, 6 L. R. A. 222; Evans v. Railway Co., 106 Mo. 601, 17 S. W. 489; State v. Leuseur, 145 Mo. 322, 46 S. W. 1075.

It must, we think, logically follow that this new consolidated company has a legal existence in each of the states in which the constituent companies previously existed. At the time of the execution of the articles of consolidation the Wabash Western Railway Company was a Missouri corporation, chartered under and existing by virtue of the laws of the state. As such it was subject to the laws and regulations of the state which created it. It possessed such powers and rights only as were granted to it, and was subject to such limitations and restrictions as the constitution and statute laws imposed upon it. Without an enabling act of the state it had no power, authority, or right to enter into an agreement of consolidation with a foreign corporation, and thereby transfer to and vest in the new company its franchises and property. This authority is conceded to have been derived from sections 1059 and 1060 of the Revised Statutes of Missouri of 1899, which are as follows:

"Sec. 1059. Companies May Consolidate, When.—Any two or more railroad companies in this state, existing under either general or special laws, and owning railroads constructed wholly or in part, which, when completed and connected, will form in the whole or in the main one continuous line of railroad, are hereby authorized to consolidate in the whole or in the main, and form one company owning and controlling such continuous line of road, with all the powers, rights, privileges and immunities, and subject to all the obligations and liabilities to the state, or otherwise, which belonged to or rested upon either of the companies making such consolidation. In order to accomplish such consolidation, the companies interested may enter into contract fixing the terms and conditions thereof, which shall first be ratified and approved by a majority in interest of all the stock held in each company or road proposing to consolidate, at a meeting of the stockholders regularly called for the purpose, or by the approval, in writing, of the persons or parties holding and representing a majority of such stock. A certified copy of such articles of agreement, with the corporate name to be assumed by the new company, shall be filed with the secretary of state, when the consolidation shall be considered duly consummated, and a certified copy from the office of the secretary of state shall be deemed conclusive evidence thereof. The board of directors of the several companies may then proceed to carry out such contract according to its provisions, calling in the certificates of stock then outstanding in the several companies or roads, and issuing certificates of stock in the new consolidated company, under such corporate name as may have been adopted: provided, however, that the foregoing provisions

of this section shall not be construed to authorize the consolidation of any railroad companies or roads, except, when by such consolidation a continuous line of roads is secured, running in the whole or in the main in the same general direction. * * * Before any railroad companies shall consolidate their roads, under the provisions of this article, they shall each file with the secretary of state a resolution accepting the provisions thereof, to be signed by their respective presidents and attested by their respective secretaries, under the seal of their respective companies, which resolution shall have been passed by a majority vote of the stock of each, at a meeting of the stockholders to be called for the purpose of considering the same, sixty days' public notice of the time, place and purpose of such meeting having been given by advertisement in some newspaper printed in the county where the general offices of said company or companies of this state are situated.

"Sec. 1060. May Aid Other Railroads, On What Terms.—Any railroad company heretofore incorporated or hereafter organized in pursuance of law, may, at any time, by means of subscription to the capital stock of any other railroad company, or otherwise, aid such company in the construction of its railroad within or without the state, for the purposes of forming a connection of the last mentioned road with the road owned by the company furnishing such aid, or any such railroad company which may have built its road to the boundary lines of the state may extend into the adjoining state, and for that purpose may build, buy, lease or consolidate, in the manner provided in the preceding section, with any railroads in such adjoining state, and operate the same, and may own such real estate and other property in such adjoining state as may be convenient in operating such road; or any railroad company organized in pursuance of the laws of this or any other state, or of the United States, may lease or purchase all or any part of a railroad, with all its privileges, rights, franchises, real estate and other property, the whole or a part of which is in this state, and constructed, owned or leased by any other company, if the lines of the road or roads of such companies are continuous or connected at a point either within or without this state, upon such terms as may be agreed upon between said companies respectively; or any railroad company duly incorporated and existing under the laws of any state of the United States may extend, construct, maintain and operate its railroad into and through this state, and for that purpose shall possess and exercise all the rights, powers and privileges conferred by the general laws of this state upon railroad corporations organized thereunder, and shall be subject to all the duties, liabilities and provisions of the laws of this state concerning railroad corporations, as fully as if incorporated in this state: provided, that no such aid shall be furnished, nor any purchase, lease, subletting or arrangements perfected until a meeting of the stockholders of said company or companies of this state, party or parties to such agreement, whereby a railroad in this state may be aided, purchased, leased, sublet, consolidated or affected by such arrangements, shall have been called by the directors thereof, at such times and places and in such manner as they shall designate, sixty days' public notice thereof having been previously given and the holders of a majority of the stock of such company, in person or by proxy, shall have assented thereto, or until the holders of a majority of the stock of such company shall have assented thereto, in writing, and a certificate thereof, signed by the president and secretary of said company or companies, shall have been filed in the office of the secretary of state: and provided further, that if a railroad company of another state shall lease a railroad, the whole or a part of which is in this state, or make arrangement for operating the same as provided in this act, or shall extend its railroad into this state, or through this state, such part of said railroad as is within this state shall be subject to taxation, and shall be subject to all regulations and provisions of law governing railroads in this state; and a corporation in this state leasing its road to a corporation of another state, or licensing or permitting a corporation of another state, under any running arrangement, to run engines and cars upon its road in this state, shall remain liable as if it operated the road itself; and a corporation of another state, being a lessee of a railroad in this state, or running its engines and cars upon a railroad in this state under a license, permit or running arrangement, shall likewise be held liable for

the violation of any of the laws of this state, and may sue and be sued in all cases and for the same causes and in the same manner as a corporation of this state might sue or be sued if operating its own road; but a satisfaction of any claim or judgment by either of said corporations shall discharge the other; and a corporation of another state, being the lessee as aforesaid, or extending its railroad as aforesaid into or through this state, shall establish and maintain an office or offices in this state, at some point or points on the line of the road so leased or constructed and operated, at which legal process and notice may be served as upon railroad corporations of this state."

Section 18 of article 12 of the state constitution, in force at the time of the execution of the consolidating act, declares that:

"If any railroad company organized under the laws of this state shall consolidate, by sale or otherwise, with any railroad company organized under the laws of any other state, or of the United States, the same shall not thereby become a foreign corporation; but the courts of this state shall retain jurisdiction in all matters which may arise, as if said consolidation had not taken place. In no case shall any consolidation take place, except upon public notice of at least sixty days to all stockholders, in such manner as may be provided by law."

The consolidation, in so far as the Missouri constituent was concerned, was made subject to said constitutional restriction. Shields v. Ohio, 95 U. S. 319–323, 24 L. Ed. 357; Keokuk & W. R. Co. v. Missouri, 152 U. S. 301–310, 14 Sup. Ct. 592, 38 L. Ed. 450; Railway Co. v. Adams, 180 U. S. 2, 21 Sup. Ct. 240, 45 L. Ed. 395; Railway Co. v. Berry, 113 U. S. 465–475, 5 Sup. Ct. 529, 28 L. Ed. 1055. Said provision of the state constitution was a caveat to all the constituent members to the consolidated agreement that, in entering into the compact for a new corporation, the Wabash Western Railway Company should not thereby become a foreign corporation, and that the courts of the state should retain jurisdiction in all matters arising thereafter as if such consolidation had not taken place. The very existence of the new corporation in Missouri was derived from a grant of the state. In Shields v. Ohio, 95 U. S. 323, 24 L. Ed. 357, the court, speaking in reference to the character of the consolidation, said:

"The new organization took the powers and faculties designated in advance in the acts authorizing the consolidation,—no more and no less. It did not acquire anything by mere transmission. It took everything by creation and grant. * * * When the consolidation was completed, the old corporations were destroyed, a new one was created, and its powers were 'granted' to it, in all respects, in the view of the law, as if the old companies had never existed, and neither of them had ever enjoyed the franchises so conferred. The same legislative will created and endowed the new corporation. It did one as much as the other."

So in Atlantic & G. R. Co. v. Georgia, 98 U. S. 364, 25 L. Ed. 185, the court, speaking of the transmutation of the old into the new, said:

"Their powers, their franchises, and their privileges were therefore gone, no longer capable of exercise and enjoyment. Gone where? Into the new organization, the consolidated company, which exists alone by virtue of the legislative grant, and which has all its powers, facilities, and privileges by virtue of the consolidation act. * * * That act created a new corporation, and endowed it with the several immunities, franchises, and privileges which had previously been granted to the two companies, but which they could not longer enjoy. It necessarily follows that the new company held the rights granted to it under and subject to the law as it was when the new charter was granted."

The existence of the consolidated company in Missouri coming as a grant from the state, how, in the face of the constitution of the state, that its right to consolidate with an outside corporation shall not operate to make it a foreign corporation for jurisdictional purposes, can it be maintained that the new corporation is a citizen of the state of Ohio, a foreign corporation, with the right of removal from the state to the federal court? The express limitation of the constitution is that, while the Wabash Western Railway Company might consolidate with a foreign corporation, the state courts "shall retain jurisdiction in all matters which may arise, as if said consolidation had not taken place." The new consolidated corporation was created cum onere,—with this restriction of the organic law of the state, the sovereign from which it received the grant to be in the state, placed upon it.

Stress is laid in argument by the learned counsel for the defendant company on the fact that it is apparent on its face that the agreement for consolidation pursued in detail the provisions of the Ohio statute authorizing the consolidation of an Ohio railroad with outside railroad companies, and that therefore it evidences a purpose to organize an exclusive Ohio corporation. The conclusion drawn, it seems to us, is a non sequitur. The authority of the Ohio constituent to enter into a consolidation being entirely derived from the grant, a statutory regulation of the state of Ohio, the proceeding had to conform to all the essential requirements of the state statute to become effective in that state. The same is equally true as to the requirements of the laws of each of the other states in which the constituent companies were located and incorporated. Unless the consolidation agreement had provided for a compliance, and each company had complied, with all the essential requirements of the law of the respective states, the consolidation could not have become operative. Forsooth, that the statute of the state of Illinois required a certain thing and the state of Missouri another to be done—one more and one less than the other— to authorize the act of consolidation of corporations existing under grants of the respective states, could not make the consolidated company a citizen of one state any more than of the other. Had the articles of agreement for consolidation expressly provided that the consolidated company should be deemed and become a corporation alone of the state of Ohio, it would have been ineffective, as the agreement could not qualify or extend the grants, with their limitations, under the statutes of the respective states. Railway Co. v. Adams, 180 U. S. 1–17, 21 Sup. Ct. 240, 45 L. Ed. 395; O'Brien v. Cummings, 13 Mo. App. 197. While the Ohio statute goes into more details, and postpones the effective completion of the act of consolidation until certain things are done, these were only essential to the completion of the grant in that state to the existence of the consolidated company. This is made clear by the language of section 3382 of the Ohio statute, which declares:

"When the agreement is made and perfected, as provided in the preceding section, and the same, or a copy thereof, filed with the secretary of state, the several companies, parties thereto, shall be deemed and taken to be one company, possessing within this state all the rights, franchises, and privileges,

and subject to all the restrictions, disabilities, and duties, of a railroad company."

It did not, as it could not in law, undertake to declare or define the powers, status, and restrictions of the consolidated company in another sovereign state; and in recognition of this fact said section contained the qualification:

"The several companies, parties thereto, shall be deemed and taken to be one company, possessing within this state all the rights," etc., "of a railroad company."

It is provided, for instance, as disclosed by the articles of agreement, that it was required by the statute of Illinois that, in addition to filing the final agreement, when duly executed, with the secretary of state, it should be filed with the recorder of deeds in each county through which the road ran. Did this additional requirement—a further act to be done under the Illinois statute to authorize the act of consolidation—make the consolidated company exclusively a citizen of Illinois any more than of any other state represented by the original constituent companies?

It is true that section 3383 of the Ohio statute provides for a stockholders' meeting, after the adoption of the agreement, for the election of officers "of the new company, * * * provided all the stockholders of the constituent companies are present." And the following section provides that:

"Upon the election of the first board of directors of the company created by the agreement of consolidation, all and singular the rights, privileges, and franchises of each of the companies to the agreement, and all the property, etc., shall be deemed to be transferred to and vested in such new company without further act or deed; all property, rights of way, and other interests, shall be as effectually the property of the new company as they were of the companies parties to the agreement," etc.

On this is based the contention of counsel for defendant that the consolidation never became effective until such meeting of the stockholders of the new company and the election of a new board of directors, and that, inasmuch as the place of assembling the stockholders was in the state of Ohio, they constituted the natural persons constituting the corporation, and by their conventional act of electing a board of directors in Ohio their citizenship is to be imputed to the corporation as of the state of Ohio. This is strained and too metaphysical for practical application. Section 3381 of the Ohio statute had provided the manner of executing the agreement for consolidation on behalf of the stockholders of the Ohio corporation substantially as the Missouri statute provided. This was followed up by section 3382, declaring that "when the agreement is made and perfected as provided in the preceding section, and the same, or a copy thereof, filed with the secretary of state, the several companies, parties thereto, shall be deemed and taken to be one company,"—clearly indicating that the new company had already been brought into existence, the evidential fact of which was the filing of the agreement with the secretary of state, which was done. The succeeding section (3383), therefore, provided merely a mode for bringing into existence a board of directors

and officers of the new company, already created. The succeeding section (3384) provides that, upon the election of the first board of directors "of the company created by agreement of consolidation," the property, franchises, etc., of the constituent companies, "shall be deemed to be transferred to and vested in such new company without further act or deed." This is nothing more than a declaration by the Ohio statute of what is necessarily implied by such agreement for consolidation under the Missouri statute, and what the law under such statute would execute, without more.

The holding of this organization meeting in Ohio, rather than in St. Louis, where the board of directors of the new company have since usually held their meetings, was entirely optional; and in no legal sense was it essential for the transaction of the business in hand. It could not have the effect of fixing the situs of the corporation, as such corporation has a domicile in each of the states by which it is created; and the meeting and transaction of business in either state binds it everywhere. Graham v. Railway Co., 118 U. S. 161, 6 Sup. Ct. 1009, 30 L. Ed. 196; Ohio & M. Ry. Co. v. People, 123 Ill. 467, 14 N. E., loc. cit. 879; Bridge Co. v. Mayer, 31 Ohio St., loc. cit. 325.

Let it be conceded, as contended by counsel, that the rule is firmly established that the legal entity,—the artificial corporation,—which exists by force of law, can have no existence beyond the limits of the state or sovereignty which brings it into life and endows it with its faculties and powers, and that the legal residence or domicile of the natural persons who constitute the stockholders is imputable to the state chartering the corporation. It must as well obtain that as the consolidated company "has no legal existence in either state, except by the law of the state" (Railway Co. v. Wheeler, 1 Black, 297, 17 L. Ed. 130), the citizenship of the stockholders in the respective constituent corporations entering into the consolidation is imputable to the state where such constituent corporation was created, and this imputation is carried over into the consolidated company as respects that portion of the road lying within a state whose law authorized the act of consolidation. This view is authoritatively sustained. In Atlantic & G. R. Co. v. Georgia, 98 U. S. 359–362, 25 L. Ed. 185, the court, discussing the legal effect of a consolidation of two railroad companies, as distinguishable from a mere partnership arrangement or merger, said:

"The intention of the legislative act as expressed in the consolidating act controls. We think that intention was the creation of a new corporation out of the stockholders of the two previously existing companies."

Quoting from McMahan v. Morrison, 16 Ind. 172, 79 Am. Dec. 418:

"The effect of a consolidation is a dissolution of the corporations previously existing, and at the same instant the creation of a new corporation, with property, liabilities, and stockholders derived from those then passing out of existence."

More pertinent still to the issue at bar is the case of Muller v. Dows, 94 U. S. 444, 24 L. Ed. 207. The Chicago & Southwestern Railway Company, an Iowa corporation, consolidated with a Missouri corporation of like name, under the Missouri statute in question and a like statute of the state of Iowa. The court said:

"The two companies became one. But in the state of Iowa that one was an Iowa corporation, existing under the laws of that state alone. The laws of Missouri had no operation in Iowa."

The corollary of this proposition is equally true,—that in the state of Missouri it was a Missouri corporation, existing under the laws of that state alone.

It is not deemed pertinent to discuss the language employed by the courts in cases like Railway Co. v. James, 161 U. S. 548, 16 Sup. Ct. 621, 40 L. Ed. 802, Louisville, N. A. & C. R. Co. v. Louisville Trust Co., 174 U. S. 552, 19 Sup. Ct. 817, 43 L. Ed. 1081; Louisville Trust Co. v. Louisville, N. A. & C. Ry. Co., 75 Fed. 433, 22 C. C. A. 378, 43 U. S. App. 550, and Taylor v. Railway Co. (C. C.) 89 Fed. 119, and like cases, for the reason that they were not instances of the consolidation of the original corporation, which were dissolved and went out of existence and a new corporation came into being under the act of consolidation. Where a corporation of one state acquires by purchase a railroad corporation in another state, and the right, under the law of the state which created the corporation so purchased, to operate the same subject to the domestic laws of that state, and even under conditions which require the purchasing company to become a domestic corporation of such state, the purchasing corporation is not dissolved or merged into a new corporate existence. It retains its original autonomy, and for jurisdictional purposes its citizenship adheres in the state which granted its original charter. Likewise may a corporation of one state consolidate with a corporation of another state under articles of agreement which do not work a dissolution of either corporation with a consequent loss of its citizenship in the state of its creation. Had the Ohio corporation acquired the Missouri corporation by purchase, and the like, it would have owned and controlled the road in Missouri, without affecting its citizenship for jurisdictional purposes.

The case of Walters v. Railroad Co. (C. C.) 104 Fed. 377, invoked by defendant, is an apt illustration of the distinction. It is manifest from the opinion that the court found from the facts that no new corporation was created by the consolidation, but that it assumed the form of a sale of the property of the Nebraska railroad company to the Chicago, Burlington & Quincy Railroad Company of Illinois. Hence the language of the court:

"The manner of consolidation was a sale of all of the property of the Nebraska corporation to the defendant company, and an issue of new stock of the defendant company to the stockholders and owners of the Nebraska corporation. That a consolidation may be effected by a sale of the property and franchise of one corporation to another, without the creation of a new corporation, is well established by the authorities. * * * Where, however, a new corporation is created by the joint action or operation of the laws of two or more states, the citizenship of such corporation will be treated as that of each state."

While it is not deemed of any controlling importance, it may be respectful to advert to the suggestion of defendant's counsel that the defendant company was held to pay to the secretary of state of Ohio $52,000 as fees for filing the articles of agreement of said consolidation. The payment of these fees was resisted by the defendant company on the ground that it did not thereby become in effect an exclusive new corporation of the state of Ohio, and that it existed in

other states as well. The supreme court overruled this contention, and held that the defendant company was in effect a new consolidated company, which could only exist in Ohio by consent of the state, and was subject to such regulations, conditions, and burdens as that state might see fit to impose. The court said:

"The purpose of the tender of the articles of consolidation to the secretary of state was to secure to the consolidated company certain powers, immunities, and privileges which appertain to a corporation under the laws of Ohio. The rights thus sought could only be acquired by the grant of the state of Ohio, and depended for their existence upon the provisions of its laws. Without that state's consent they could not have been procured." Ashley v. Ryan, 153 U. S., loc. cit. 440, 14 Sup. Ct. 866, 38 L. Ed. 773.

This must be equally true as to this consolidated company in the state of Missouri,—that the rights sought to be secured by the consolidated company could only be acquired in the state of Missouri by a grant of the state, and depend for their existence upon the provisions of its laws, and without the state's consent they could not have been procured.

While the case of Railway Co. v. Meeh, 69 Fed. 753, 16 C. C. A. 510, 32 U. S. App. 691, on account of the peculiar plea interposed by the company, did not present the precise question at bar, it is quite evident, from the trend of the opinion, that the court entertained the view that where a railroad company, like the Missouri Pacific, is operating a continuous line as one company through several states, under an act of consolidation authorized by the local law of the respective states, it is a corporation of the state from which it derives its authority to be in the state, and that, as it derives all of its powers to act as a corporation in the state of its adoption from the local laws, "if it is there sued for an act done within the state, it is sued and must answer as a domestic, and not as a foreign, corporation,"—quoting with approval the language of Mr. Justice Breese in Quincy R. Bridge Co. v. Adams Co., 88 Ill. 615–619, that:

"The only possible status of a company acting under charters from two states is that it is an association incorporated in and by each of the states, and, when acting as a corporation in either of the states, it acts under the authority of the charter of the state in which it is then acting, and that only; the legislation of the other state having no operation beyond its territorial limits."

Other interesting questions may suggest themselves to the judicial mind as to the rights of this consolidated company to sue in the United States court of other states on the ground of diverse citizenship, and its right of removal on the ground of being a nonresident defendant when sued in the state court for a cause of action arising in another state, or its right of defense to such action on the ground that the company sued is not liable on the cause of action stated. But any discussion here of these questions would be mere obiter dictum. What we decide is that, the cause of action against the company having arisen in this state, the defendant is not entitled to remove the controversy into the United States circuit court on the ground that it is a citizen of another state.

It results that the plea to the jurisdiction is sustained, and the cause will be remanded to the state court. All concur.